INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. FRANK S. WALTERS.

No. 2782. Decided November 10, 1915.

1.—Master and Servant — Negligence — Signals — Warning of Danger — Knowledge.

The duty óf an engine crew engaged in switching cars to give warning signals for the protection of an employe who might come upon the track in front of the moving engine arises only from their knowledge that his situation is such that the signals should be given; but the existence of knowledge should be left to the jury as a question of fact, where a reasonable mind might infer it under the evidence. (P. 375.)

2.—Same—Case Stated.

· A car inspector riding cars so violently kicked in to be coupled with a standing train that there was danger of a forcible collision, leaping from the car, came suddenly onto the parallel siding on which the engine was moving unknown to him, and was so run down. The evidence here considered is held to leave the question one of fact and rightly submitted to the jury, whether the engine crew had sufficient knowledge of the likelihood of such act by and injury to him as to make it their duty to warn him of the movements of the engine by bell or whistle. (Pp. 374-377.)

3.—Rulings Approved.

The rulings of the Court of Civil Appeals in this case (165 S. W., 525) are approved. (P. 377.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Harris County.

The railway company applies for writ of error to.the appellate court on its affirmance of a judgment recovered against it by Walters in his suit. The latter having answered the application, the Supreme Court at the same time grant the writ of error and affirm the judgment.

*Wilson, Dabney & King,* for plaintiff in error.—The Court of Civil Appeals erred in its last opinion, when having properly held that there was no evidence whatever that the employes in charge of the engine had knowledge or notice that the plaintiff would probably jump from the car and run across the track in front of the engine, they then conclude (though the facts do not bear out this conclusion) that the jury could have found that the impetus of Walters' body in properly leaving the moving cars on which he was riding would have carried his body either across the track or so close as to endanger him, and that therefore the whistle should have been blown and the bell rung so he would have left the cars with less impetus or would have left same in such manner as to have gone in the space between the tracks, and that, therefore, it was proper to submit the issue of negligence in not ringing the bell and blowing the whistle, coupled with knowing he was hanging on the cars, on which assumption the Court of Civil Appeals concludes there was no reversible error in giving the charge complained of. This was error, because it might have been considered that the verdict of a jury

rendered entirely without any evidence to sustain it is not entitled to such weight and respect that it should be considered conclusive on an issue not even submitted to that jury, and because the court holds there was no evidence to sustain the issue actually submitted by the charge, but that the verdict may be sustained on another issue, to-wit: that leaving the cars in a proper way (and not running across the track immediately in front of a moving engine without looking) Walters might have been struck. To this we answer: No such issue was submitted to the jury; that such issue directly contradicts the testimony and the case of plaintiff, which is that being scared of a collision (which did not occur) he ran across the track immediately in front of a moving engine and did not look for it because of his fear; if submitted to the jury, the facts would not have sustained the issue, as there was abundant space between the tracks for a trainman to alight in safety from the ladder. Appellant is entitled under the Constitution to a trial by jury, and the Court of Civil Appeals has no power nor jurisdiction to itself find a debatable issue of fact against appellant, which issue was not submitted to the jury. If a liability can be predicated on such an issue (which we do not think the facts will sustain), the case should be submitted to a jury on that issue, and that jury should find the facts. On the Court of Civil Appeals' findings in its last opinion, it should have reversed and remanded the case for this purpose and not have undertaken to decide that issue itself. Again, there were no allegations in the petition to sustain the issues complained of.

*Llewellyn & Foster* and *J. W. Parker,* for defendant in error.

Mr. Justice YANTIS delivered the opinion of the court.

Walters, the defendant in error, recovered a judgment against the plaintiff in error for personal injuries inflicted upon him while he was engaged in the service of said Company as a car inspector and repairer at Sellars station, where there were switching yards containing nine sidetracks. At the time of his injury he was riding on the side of a box car that had been kicked, with eight others, at a rate of speed alleged to be excessive, for the purpose of coupling them with several stationary cars further down the switch track, with the purpose in view of completing the train in this way and then continuing the train and the engine attached thereto to Houston. The engine that was pulling said train was used in making the kick referred to. After doing which it then entered a sidetrack which ran parallel to and in about ten feet of the track on which the defendant in error was riding the box car, with the purpose in view of going to the oil and water tanks to secure oil and water. It was Walters' duty to inspect the stationary cars before permitting them to leave on their journey, and it was with this in view that he was riding one of the nine cars that had been kicked towards the stationary cars. Before the car upon which Walters was riding collided with the stationary cars he become alarmed, as he testified,

for his own safety, believing that the speed at which the cars were going would make a violent collision with the stationary cars and might injure him with falling doors and other debris; that in this frame of mind he alighted from the car and ran across the track on which the engine was moving, without looking for an engine, and without knowing that one was approaching. The engine struck him and caused the injuries for which he sued.

A portion of the ground of negligence alleged was that the engine crew failed to ring a bell or blow the whistle to warn him of their approach. The writ of error was granted by this court because it then inclined to the view that the evidence was insufficient to charge the engineer and fireman with notice that Walters would alight from the car on which he was riding, and that he would run across the track on which the engine was moving. Upon a closer and a more mature consideration of the evidence bearing upon this question, we have reached a different conclusion. It is quite true that if the engine crew were not in possession of sufficient facts from which an ordinarily prudent person, under the same circumstances which surrounded them, would have anticipated or foreseen that Walters might alight from the car, and might enter upon the track where the engine was moving, or near enough thereto to receive the injuries which he did receive, or some similar injuries, then the law would absolve them from the duty of ringing the bell or blowing the whistle, or rather, no such duty would arise. But while this is true, it is also a settled rule, that if there was information which the engine crew possessed sufficient to place them upon notice that Walters might leave the car on which he was riding, and might place himself in a position of danger of being struck by the engine, then it became a question of fact for the jury to settle whether or not they should have foreseen that Walters would thus place himself in a position where he might be injured. It would then become a question of fact for the jury to determine whether, under such circumstances, the train crew was guilty of negligence in failing to ring the bell or blow the whistle, or otherwise warn Walters of their approach so that he might avoid coming in contact with the engine. Of course, it is true that if there was no evidence which would charge the train crew with such notice, then the duty to warn Walters by ringing the bell or blowing the whistle, or otherwise, would not arise. A careful investigation has convinced us that there was sufficient evidence to warrant the court in submitting the question of notice to the jury. The evidence was sufficient to support a finding by the jury that the engineer, notwithstanding his denial, did see Walters riding on the car. The evidence shows that Walters was riding on the side of the box car next to the track on which the engine was moving, and that the engineer and fireman were riding in their places in the engine which was backing, but that they were looking in the direction in which they were going, and that two men named Tucker were riding on the tender facing and looking the way they were going, or in the direction of

Walters. The track on which the engine was moving was but ten feet from the track on which Walters was riding the car. They all knew that Walters was a car inspector, and was riding down to inspect the cars that were to be attached to the train. They knew the cars that had been kicked were going at an excessive rate of speed, if we give full credit to the findings of the jury, for the jury had a right to reach this conclusion from the testimony of Walters that they were going about six miles an hour. It is reasonable that the engine crew should conclude that Walters would alight from the car, either when the kicked cars struck the stationary cars, or just before doing so, for the purpose of making inspection of the cars. It might be deducible from the speed at which the cars were going that the engine crew had notice that the collision would be violent, and that Walters might become alarmed for his safety, and might alight from the car to escape injury. Before Walters alighted from the car, the yardmaster, Harlan, who was riding on the first of said cars next to the place of collision, alighted and ran across the track in front of the engine. From this it might be fair to conclude, and it was within the province of the jury to do so, that the engine crew had notice that Walters might attempt to do likewise, either from fright, or from some other reason. The jury had a right to conclude from the evidence that the engine crew would have notice that when Walters alighted from the car to inspect the stationary cars that there would be considerable momentum on account of the excessive speed that the cars were going, which might cause his body to reach the track on which the engine was riding, or so near to it as to raise a probability of some serious injury to him. The tracks were only about ten feet apart, and of course the cars and engine would cover several feet of this distance, and Walters' body would occupy a considerable portion of the distance, so that the space was so small where he could alight that it might be reasonable for the jury to conclude that in alighting from the car, even without fear, at the speed it was going, he might come in contact with their engine. That the engine crew might have foreseen that Walters might enter upon their track is intensified by the fact that the evidence is sufficient to support a finding by the jury that Walters was ignorant of the approach of the engine, and that the crew knew this, and not being advised thereof he might not be as careful about avoiding the track on which the engine was moving as he otherwise would be. The plaintiff testified that he did not know the engine was on this track; that he supposed it was not on this track, but that it was still at its position for the purpose of connecting with the main train and continuing its journey to Houston; that it was customary for the engines, when coming into this town, to secure their oil and water before they entered it, and he supposed that they were already equipped with oil and water, and that they would not return to the oil and water tanks which they had passed in coming in. He testified that it was customary for an engine, when moving in switch yards, to keep its bell ringing. The engine crew saw that

Walters' back was to them, and this was some evidence of notice that he did not know of their approach. If they did not ring the bell or blow the whistle, as there was evidence to prove, this fact was some evidence that he was ignorant of their approach.

From such facts as these the jury had a right to conclude that the train crew should have foreseen that Walters was ignorant of their approach, and that in his situation he might alight from the car on which he was riding and cross the track upon which the engine was moving, or place himself near enough thereto to receive the injuries; and if they had such notice, as the jury would be warranted in concluding, then it was a question of fact whether an ordinarily prudent person would have warned Walters by ringing the bell and blowing the whistle, or otherwise. The rule is well settled, from which this court has never wavered, that unless all reasonable minds would agree that the evidence was insufficient to prove that the train crew should have anticipated that Walters might leave the car on which he was riding, and place himself on the track, or near enough thereto as to be injured, then it became a question of fact for the jury, and the court would not be warranted in declaring as a matter of law, that the engine crew could not anticipate such action on the part of Walters.

Measuring the point at issue by this rule, we have reached the conclusion that for us to hold as a matter of law that the engine crew had no evidence from which they could reasonably anticipate such action on the part of Walters would be to usurp the province of a jury in passing upon facts which it was their exclusive province to decide.

We have considered the other questions involved in this appeal but have decided that they are without merit, and that the Court of Civil Appeals made the proper holding on each of them. The judgment of the Court of Civil Appeals and of the District Court should be affirmed, and it is accordingly so ordered.

*Affirmed.*