**H. E. BUTT GROCERY CO. v.
JOHNSON et vir.**

No. 11982.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 23, 1949.

Rehearing Denied Dec. 28, 1949.

502

Clinton G. Brown, Jr., San Antonio, Grady Barrett, San Antonio, Brewer, Matthews, Nowlin & Macfarlane, San Antonio, for appellant.

Oliver & Peace, San Antonio, Harry B. Berry, San Antonio, for appellees.

NORVELL, Justice.

On the afternoon of July 2, 1947, Mary Johnson, the wife of John W. Johnson, slipped and fell upon the floor of H. E. B. Store No. 5, located at 2110 Fredericksburg Road, in San Antonio, Texas. Mrs. Johnson suffered severe personal injuries and with the joinder of her husband brought suit against the appellant, H. E. Butt Grocery Company, the operator of the store, contending that her injuries were caused by the appellant's negligence. The trial judge submitted the case upon 32 special issues, and, based upon the jury's answers thereto, rendered judgment against the appellant for $15,000.00.

As we see the case, there are two main questions raised: Is the evidence sufficient to take the case to the jury? And, if so, was the case properly submitted to the jury?

Mrs. Johnson's fall, according to her testimony and that of her witnesses, was caused by the presence of a liquid upon the floor, probably the contents of a broken Coca Cola or pop bottle. There seems to be no disagreement between the parties as to the rule of liability when injury is caused by a foreign substance upon a floor which rendered it slippery or unsafe for use. In order to establish liability against the defendant operator of the store it is necessary to show:

1. That the defendant put the foreign substance upon the floor, or,

2. That the defendant knew the foreign substance was on the floor and wilfully or negligently failed to remove it, or

3. That the foreign substance had been upon the floor for such a period of time that it would have been discovered and removed by the defendant, had the defendant exercised ordinary care.

See Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; Woolworth v. Goldston, Tex.Civ.App., 155 S.W.2d 830; Great Atlantic & Pacific Tea Co. v. Logan, Tex.Civ.App., 33 S.W.2d 470.

The case was submitted to the jury upon the third theory above set out. There was dispute as to whether or not there was any water or other liquid upon the floor, but in determining the sufficiency of the evidence to take the case to the jury, we must accept the testimony favoring the prevailing party below.

It appears that a number of display counters for breads, candies, pastries and similar merchandise were placed in a lane parallel with and about six feet distant from the south wall of the store. Situated between two of these counters was an ice box containing bottles of soft drinks. The box was about three feet wide, six feet long and four feet high. It was painted red and carried a large Coca-Cola advertisement. This Coca-Cola box was near the middle of the row of display counters and about 35 or 40 feet from one of the store's exits. Large windows were set in the wall back of the counters, and between these windows and the counters was an aisle about six feet wide for the use of appellant's clerks and employees.

One of appellant's employees was on duty near the Coca-Cola box and could see the floor near the box most of the time. A porter was also employed to clean the floor when water was spilled or vegetables, fruits and other substances were dropped upon it. The floor was constructed of a composition material known as "Terrazo." The exit near the Coca-Cola box was one commonly and frequently used by customers of the store, and it was convenient for them to pass by the Coca-Cola box on their way

out and this probably accounts for its location. The place in front of the box where customers would stand to receive their soft drinks and perhaps drink them would naturally be a place where water would accumulate and the contents of bottles would probably be spilled.

According to Mrs. Johnson and her witnesses, there was a wet place in front of the box "about as big as the box," at the time she fell. There were also pieces of a broken bottle upon the floor, which raises an inference that the wetness of the floor was caused by someone dropping and breaking a bottle. Mrs. Johnson testified that the wet spot on the floor was partially obscured by a shadow cast by the box itself. She further stated that the wet spot was sticky, wet and muddy. In this she was corroborated by other witnesses, who testified that when Mrs. Johnson was helped from the floor her dress was muddy and that the wet spot itself was dusty, grimy and muddy. From this testimony, the inference can properly be drawn that a liquid, either water or the contents of a soft drink bottle, had been allowed to remain upon the floor for some length of time.

■ We are of the opinion that the evidence was sufficient to take the case to the jury. In determining the question, due consideration must be given to the elements of time and place. While a storekeeper is not an insurer of the safety of his invitees, he is, nevertheless, under a duty to maintain his premises in a reasonably safe condition. Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073. This Coca-Cola box was placed near a busy exit of the store building. Numerous people would pass in front of it and probably desire to stop and partake of a cold drink before leaving the store. The serving of cold drinks generally brings with it wet spots and liquids upon the floor. Ordinary care requires that such a place be constantly watched and excess liquids removed from the floor frequently. Considering the position of the Coca-Cola box and the fact that appellant's employees were stationed near the box, the failure to discover the presence of water or other liquid on the floor near the box for a comparatively short period of time might properly be considered as substandard conduct by a jury, especially in view of the fact that the presence of such liquids on the floor near the box must be considered as usual and to be expected.

■ In addition to the above, Mary Johnson's husband testified that shortly after the accident occurred, appellant's manager stated that, "I thought that had been taken care of." This testimony, although contradicted, was admissible as it tends to support the theory that the manager had notice of some dangerous condition at or near the location of the Coca-Cola box, and constitutes an additional circumstance which may be properly considered in determining whether or not judgment for the appellant should have been rendered as a matter of law.

After a careful review of the evidence in the light of the applicable rules of law, we are of the opinion that the case was one for the jury. Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625; Foley v. F. W. Woolworth Co., 293 Mass. 232, 199 N.E. 739; Louie v. Hagstrom's Food Stores, Inc., 81 Cal.App.2d 601; 184 P.2d 708.

We next consider the contention that the case was improperly submitted to the jury. The theory of recovery submitted on behalf of appellees has been mentioned. In addition to a general denial, the appellant pleaded affirmatively two defenses only. These were the failure of Mary Johnson to keep a proper lookout and unavoidable accident. It was not necessary to employ 31 questions to submit the controlling issues relating to liability. (Special Issue No. 32 inquired as to the amount of damages.) Numerous evidentiary and immaterial issues were admittedly submitted.

However, in the recent case of Fisher v. Leach, 221 S.W.2d 384, this Court held that the submission of an immaterial issue does not ordinarily constitute reversible error. We said, 221 S.W.2d 390, "There is nothing inherently prejudicial in submitting an immaterial issue or one concerning

which there is no conflict or dispute in the evidence. While under certain circumstances the submission of such issues may result in prejudice and a reversal of the judgment, this result does not necessarily follow in all cases. We are of the opinion that Rule 434, R.C.P., is applicable to the situation and a reversal should not be ordered unless it appears that the submission of the unnecessary issue 'amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.'" See also, Texas & New Orleans Ry. Co. v. Rooks, Tex.Com.App., 292 S.W. 536; International & Great Northern Ry. Co. v. Walters, Tex.Civ.App., 165 S.W. 525, affirmed 107 Tex. 373, 179 S.W. 854; 41 Tex.Jur. 1021, § 225

It does not follow that in every case the submission of immaterial, evidentiary or undisputed issues may be regarded as mere harmless error. In the case of Turner v. Missouri, Kansas & Texas Ry. Co., 177 S.W. 204, 208, this Court said:

"Assignments 17 to 25 inclusive, respectively complain of the submission of special issues A, B, C, D, E, F, G, and H. All of these issues should not have been submitted. They related to merely evidentiary matters, most of which were undisputed, and some were admitted in the sworn pleadings of both parties. To ask the jury to go out and seriously deliberate on the question whether Turner would have been injured if he had stayed where he was when he saw or heard the train approach, served no useful purpose, to say the least. The assignments are sustained.

"By the twenty-sixth assignment complaint is made of the submission of special issue J, which was objected to on several grounds, one of which was that it failed to inquire whether Turner's acts constituted negligence. The objections to these issues are so obviously good that it is unnecessary to discuss them. Questions which serve no useful purpose should not be submitted as they only tend to confuse and mislead the jury. The assignment is sustained."

▮ The judgment of the trial court in the Turner case was reversed and, although there were a number of other assignments of error sustained, the opinion indicates that it is reversible error to submit issues which serve no useful purpose but only tend to confuse and mislead the jury. See also, St. Louis, San Francisco & Texas Ry. Co. v. Wilson, Tex.Com.App., 279 S.W. 808; Hicks v. Morgan, Tex.Civ.App., 259 S.W. 263; Manes v. J. I. Case Threshing Machine Co., Tex.Civ.App., 204 S.W. 235.

▮ Appellant's principal contention as to improper submission relates to its affirmative defense of contributory negligence. It was alleged that Mrs. Johnson failed to keep a proper lookout for her own safety and that this failure was a proximate cause of her injuries. Rule 94, T.R.C.P. required that contributory negligence be affirmatively pleaded by the defendant, and "it is settled as the law of this State that the defendant in a negligence action, who pleads contributory negligence on the part of the plaintiff as a defense, must assume the burden of proving it. 30 Tex.Jur. p. 810." Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, 226. The evidence adduced at the trial was sufficient to support appellant's pleaded defense that Mrs. Johnson had failed to keep a proper lookout for her own safety. In addition to submitting the issues of lack of proper lookout and proximate cause, five additional issues (Nos. 22 to 26, inclusive) inquiring as to Mrs. Johnson's conduct and behavior upon the occasion of her injury were submitted over appellant's objections.

Special Issue No. 1 inquired as to whether or not there was a wet substance on the floor when (sic) Mary Johnson fell. The jury answered the issue in the affirmative. Special Issue No. 11 inquired as to the presence of broken glass on the floor where Mary Johnson fell. This issue was also answered in the affirmative. Said Issues Nos. 22 to 26, inclusive, read as follows: "If you have answered question No. 1 (wet substance) in the affirmative you will answer the following question. If you have answered question No. 1 in the negative, you need not answer the following question.

"Question No. 22.

"Do you find from a preponderance of the evidence that the wet substance, if any, on defendant's store floor was not obvious to Mary Johnson before she fell?

"Answer by stating, 'It was not obvious,' or 'It was obvious.'

"We, the jury, answer, It was not obvious.

"If you have answered question No. 11 (broken glass) in the affirmative you will answer the following question. If you have answered question No. 11 in the negative, you need not answer the following question.

"Question No. 23.

"Do you find from a preponderance of the evidence that such broken glass, if any, on defendant's store floor was not obvious to Mary Johnson before she fell?

"Answer by stating, 'It was not obvious', or 'It was obvious.'

"We, the jury, answer, It was not obvious.

"If you have answered question No. 1 (wet substance) in the affirmative you will answer the following question. If you have answered question No. 1 in the negative, you need not answer the following question.

"Question No. 24.

"Do you find from a preponderance of the evidence that before Mary Johnson fell she did not fail to exercise ordinary care to discover the wet substance, if any, on the store floor?

"Answer by stating, 'She did not fail' or 'She did fail.'

"We, the jury, answer She did not fail.

"If you have answered question No. 11 (broken glass) in the affirmative, you will answer the following question. If you have answered question No. 11 in the negative, you need not answer the following question.

"Question No. 25.

"Do you find from a preponderance of the evidence that before Mary Johnson fell she did not fail to exercise ordinary care to discover the broken glass, if any, on the store floor?

"Answer by stating, 'She did not fail' or 'She did fail.'

"We, the jury, answer, She did not fail.

"If you have answered the preceding question 'She did not fail,' and not otherwise, then you will answer the following question.

"Question No. 26.

"Do you find from a preponderance of the evidence that on the occasion in question a person of ordinary prudence situated as Mary Johnson then was, would not have discovered the broken glass, if any, on the store floor?

"Answer by stating, 'She would not have' or 'She would have.'

"We, the jury, answer, She would not have."

Immediately following the issues above set out, the court submitted the pleaded defensive issue of failure to keep a proper lookout, followed by the ancillary proximate cause issue. The court instructed the jury, that "By the term 'proper lookout,' as used in this charge, is meant such lookout as a person of ordinary prudence would have exercised under the same or similar circumstances." The "proper lookout issue" submitted and the jury's answer thereto were as follows:

"Question No. 27.

"Do you find from a preponderance of the evidence that, on the occasion in question, Mary Johnson failed to keep such a lookout for her own safety as a person of ordinary prudence would have kept under the same or similar circumstances?

"Answer 'yes' or 'no'.

"We, the jury, answer, No."

By reason of the negative answer to said question, the jury made no answer to Question No. 28, the ancillary proximate cause issue.

Rule 279, T.R.C.P., provides that, "When the court submits a case upon special issues, he shall submit the *controlling issues* made by the written pleadings and the evidence * * *." The submission of Issues Nos. 22 to 26, inclusive, was not supported by appellant's pleadings which alleged af-

firmatively, in so many words, that Mrs. Johnson "failed to keep a proper lookout for her own safety." Neither were said issues supported by appellees' pleadings. It has long been the settled law of Texas that "the law raises no presumption of negligence, from the mere fact of injury, against either the plaintiff or the defendant, * * * (and therefore) it is not necessary for the plaintiff in his petition to negative, either by facts stated or by express averment, the existence of contributory negligence on his part." Gulf, Colorado & Santa Fe Ry. Co. v. Shieder, 88 Tex. 152, 30 S.W. 902, 904, 28 L.R.A. 538. It is not contended by appellees that the legal effect of the facts stated in the petition or the undisputed testimony raised a prima facie or rebuttable presumption of negligence on the part of Mrs. Johnson so as to bring the case within the exceptions mentioned in the Shieder case above cited.

Said issues Nos. 22 to 26, inclusive, were not only unsupported by pleadings and not controlling, but were argumentative in effect. Appellant was entitled to a straight-out and clear-cut submission of its properly pleaded affirmative defense of lack of proper lookout. Can it be said that such submission was afforded to it when in the charge the lack of proper lookout issue was immediately preceded by the five evidentiary and noncontrolling issues hereinabove set out? We think this question must be answered in the negative, for the reason that the evidentiary or immaterial issues objected to, constituted no part of appellees' case, but related solely to Mrs. Johnson's behavior, which was material upon the issue of contributory negligence. Said issues thus served as argumentative stepping stones to the ultimate and damaging conclusion (from appellant's standpoint) that Mary Johnson was not negligent in failing to maintain a proper lookout for own safety.

We hold that the court erred in submitting Issues Nos. 22 to 26, inclusive, to the jury over appellant's objections, and further that such error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case.

It is no answer to the finding of probable prejudice in this case to point out that the evidentiary issues complained of were worded so as to place the burden of proof upon appellees, or to say that the answers to said issues were consistent with the answer to the issue relating to the lack of proper lookout. The probable prejudice results from depriving appellant of a fair submission of its pleaded defense of contributory negligence, by confusing and confounding the controlling issue with a number of questions which decide nothing but serve as improperly supplied argumentative bases from which to assault and overthrow appellant's defensive theory.

A trial court is admittedly vested with a wide discretion in selecting the method and issues to be employed in submitting a case to a jury. Ordinarily, the submitting of issues which are merely evidentiary or unnecessary does not constitute reversible error. However, the discretion of the trial judge is not absolute, nor is the general rule without limitation or qualification. Whenever a party's right to a clear-cut submission of his theories of recovery or defense is unduly prejudiced by the use of excessive and unnecessary issues, a reversal of the judgment must be ordered. Turner v. Missouri, Kansas & Texas Ry. Co., Tex.Civ.App., 177 S.W. 204.

In view of the order of remand, we need not lengthen this opinion by discussing further objections to portions of the trial court's charge and other questions raised by the briefs. Such matters need not arise or be material upon another trial.

For the error pointed out, the judgment appealed from is reversed and the cause remanded to the district court for new trial.

Reversed and remanded.