Mary C. NESHYBA et vir., Appellants,

v.

Evelyn Marie MAGLIOLO, Appellee.

No. 16660.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 22, 1976.

Rehearing Denied June 3, 1976.

Kronzer, Abraham & Watkins, Robert E. Ballard, Michol O'Connor, Houston, for appellants.

Mills, Shirley, McMicken & Eckel, Alton C. Todd, Susan Crowley, Galveston, for appellee.

EVANS, Justice.

This is a negligence action resulting from a two car collision. The accident occurred prior to the enactment of Article 2212a, Tex.Rev.Civ.Stat.Ann., the comparative negligence statute. In response to special issues the jury found both parties to have been negligent and a take nothing judgment was rendered. We reverse and remand.

The accident occurred on January 5, 1972, at about 3:00 p.m. on East Bayou Drive in Dickinson, Texas. East Bayou Drive is a paved, black-topped county road about 17½ feet wide slightly "humped" in the middle. There is no center stripe down the middle. On either side there is a narrow shoulder and a drainage ditch. The black-topped pavement "doesn't have any edges and as you drive sometimes you drive along the edge and it breaks off and it gets narrower as time goes by."

The plaintiff, Mrs. Neshyba was driving her 1961 Cadillac in a westerly direction along East Bayou Drive on her way home. It was a beautiful day; the weather was clear and the road was dry. She testified that she was driving about 15 miles per hour and was about 150 feet from the entrance to her driveway when the collision occurred.

The defendant, Mrs. Magliolo, driving a borrowed car, was turning right into the south lane of East Bayou Drive from a private driveway. As she proceeded into East Bayou Drive from the private driveway, her left front fender struck the left front fender of the plaintiff's car. The plaintiff's car was stopped within a few feet of the point of impact. The defendant's car was spun to the side and came to rest in the ditch next to the driveway.

The defendant testified that as she drove out of the private driveway there were bushes on both sides which were pretty close to the road. She said she pulled up as far as she could to see; that she looked to the right in the direction of the plaintiff's vehicle; and then to the left; that "I didn't see anybody, no cars, no nothing, and I started to accelerate and there she was."

There is a curve on East Bayou Drive approximately 390 feet east of the location of the private driveway where the collision occurred. The road is straight between these two points and a vehicle approaching from the east is visible to a person in the private driveway at its entrance upon East Bayou Drive. The defendant testified that using a stop watch, she had determined that it required ten seconds to traverse the distance between these points while driving at a speed of 25 miles per hour. She testified that she looked to the left only "a few seconds" indicating that the plaintiff was already on the straight portion of the road.

"Q Now, you were in the driveway so if she is on East Bayou Drive going, generally, east, you come out the driveway, I need to know if you can tell me where she was when you started up from a stop to pull out on the road.

"A She was pretty close to me.

"Q Yes, ma'am.

"A I don't know how far.

"Q Actually, you never saw her until you collided with her, did you?

"A Like I said, I saw her and then we collided almost simultaneously.

"        .    .   ..

"Q How far back down the road was she when you saw her?

"A She was right there."

Although there are trees and shrubs lining the ditches along East Bayou Drive, the defendant's vision was not obscured at the

time she determined to proceed onto the road:

"Q. Now, if you were in a position where you had a good view of the road, stopped in a position where the wreck had not yet occurred, the bushes weren't really obstructing your view, were they?

"A. . . . I had pulled up where I could see but I also looked to the right first because that was the lane of traffic I was going to go into, was the one to the right. I was going to turn right into the lane of traffic on that side of the road, and there was no one there.

Then I looked to the left because there are a few houses down there and there was no one there so I put my foot on the gas and just as I did, my car had to go up this little incline, I think, because I hadn't gotten completely out of the driveway and you have to go up, and just as I did, I hit Mrs. Neshyba, and in the interval I had looked to the left she had come around that corner and when I started to accelerate, and apparently, I did not look this way (indicating) again, but I thought no one was there because it was just an instant."

"Q. Let me ask you a question and Mrs. Magliolo, I want to be sure I understand you, are you telling the Court you looked to the left down this way, looked back to the right and proceeded to turn right without looking to the right?

"A. I was starting from a dead stop.

"Q. Yes, but that is not the answer. I am going by what you just told the Court, you looked to the left, started turning to the right and did not look—

"A. Slowly.

"Q. —you did not look back to the right?

"A. Yes, sir.

"Q. You did not look in the direction you were proceeding?

"A. That's right."

The plaintiff also testified she did not see the defendant's car until the collision.

"A. . . . I was going slow because my driveway was just a short distance from where the collision occurred.

"Q. About how fast were you going?

"A. I would say about 15 miles, perhaps maybe less. Somewhere in there. I can't be specific there.

All of a sudden I was hit, I don't know what happened. I didn't see any cars coming and I didn't really know what happened. All I know is, I was hit.

"Q. Did you have any idea or any warning somebody was going to run into you?

"A. No, sir, not at all."

The jury found in response to Special Issues 1 through 7 that the defendant negligently drove her car from the private driveway onto East Bayou Drive; that the defendant negligently failed to keep a proper lookout; that the defendant negligently failed to yield the right of way to the car driven by the plaintiff, and that each act of negligence by defendant was a proximate cause of the collision. The jury further found in response to Special Issues 8 and 9 that the plaintiff's "failure to keep her car completely within the right half of the roadway" was negligent, which negligence was a proximate cause of the collision, and in response to Special Issues 10 and 11 that the plaintiff failed to keep a proper lookout, which was also a proximate cause of the collision.

In her first point of error the plaintiff contends the trial court erred in submitting the special issue requested by the defendant as to whether she was negligent in failing to keep her vehicle completely within the right half of the road. Plaintiff asserts that this issue, as submitted, assumes as true a material fact which was in dispute.

Special Issue No. 8 is worded:

"Do you find from a preponderance of the evidence that on the occasion in question Mary Neshyba's failure to keep her vehicle completely within the right half of the roadway was negligence?"

We sustain this point. Although the defendant testified that the collision occurred in the defendant's half of the road, her testimony as an interested witness merely presented an issue to be determined by the trier of fact. *Gevinson v. Manhattan Construction Company of Oklahoma*, 449 S.W.2d 458, 467 (Tex.1969).

The defendant was the only witness who testified that the plaintiff was driving down the middle of the road. She admitted that she did not see the plaintiff's car prior to the incident of the collision. The plaintiff testified that she was on her own side of the road at the time of the collision.

Notwithstanding this testimony by the plaintiff, the defendant contends that the evidence established, as a matter of law, that her vehicle was not entirely within the right half of the roadway at the time of the collision. The defendant points to the plaintiff's testimony with reference to a blackboard diagram of the collision as follows:

"Q. Is it your recollection that the cars stopped pretty much where they have been indicated on the blackboard?

"A. Here (indicating)?

"Q. Your car?

"A. My car.

"Q. Yes?

"A. Yes.

"Q. Now, you heard Mrs. Magliolo testify about her version of the accident?

"A. Yes.

"Q. Have you not, and about where the cars came in contact with one another? You heard that?

"A. Yes.

"Q. Do you agree with that version?

"A. I think her version, it is—yes, I agree. I do."

The defendant also contends that in the absence of the blackboard diagram being brought forward with the record, we must presume that the manner of submission of Special Issue No. 8 is supported by the evidence. We are unable to agree with defendant's contentions. The jury was at liberty to conclude from all the testimony that the plaintiff was driving entirely on her half of the road at the time of the collision; it could have decided from the evidence that testimony indicating plaintiff was driving in defendant's lane of traffic was based upon the placement of the vehicles after the collision. We have carefully considered all the testimony, including that referable to the blackboard diagrams, and find no evidence which, in our opinion, conclusively establishes the position of the cars at the time of the collision.

■ The submission of the issues of plaintiff's contributory negligence, based upon the assumed fact that plaintiff was driving in defendant's lane of traffic, was of such a nature that an erroneous verdict probably was rendered by the jury not only on the issue of plaintiff's failure to keep her car completely within her half of the road, but also with respect to the subsequent issues inquiring whether the plaintiff's failure to maintain a proper lookout was a proximate cause of the collision. Indeed, the defendant affirmatively testified that if plaintiff had maintained her vehicle in her own lane of traffic, the accident would not have occurred. We cannot consider the submission of Special Issue No. 8 harmless since it appears that the court's erroneous assumption of a disputed fact probably influenced the jury's answers to the subsequent issues. See *City of River Oaks v. Moore*, 272 S.W.2d 389 (Tex.Civ.App.—Ft. Worth 1954, re'd n. r. e.); *H. E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501 (Tex. Civ.App.—San Antonio 1949, ref'd n. r. e.).

Since we have determined that the cause must be remanded for a new trial, it becomes unnecessary that we consider the plaintiff's remaining points of error asserting that the evidence was legally and factu-

ally insufficient to support the jury's findings with respect to the defensive issues.

Reversed and remanded.