tindle 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-571-CV





ADVANCED LIVING TECHNOLOGIES, INC.,


d/b/a MANOR OAKS NURSING HOME,



 APPELLANT

vs.





IRENE TINDLE,



 APPELLEE



 




FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT



NO. 22,611, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING



 




 Irene Tindle, appellee, filed suit against Advanced Living Technologies, Inc.
("ALT"), appellant, for damages resulting from a workplace injury. After a bench trial, the trial
court awarded Tindle $366,396.00 in damages and prejudgment interest of $140,032.80. ALT
appeals, alleging that the trial court abused its discretion and that the evidence was legally and
factually insufficient to support the judgment. We will modify the trial court's judgment and
affirm it as modified.



BACKGROUND 


 On February 26, 1989, Irene Tindle, a nurse's aide at Manor Oaks Nursing Home,
was injured while transferring a resident from her bed to her wheelchair. On February 1, 1991,
Tindle filed suit against ALT, alleging that her employer had failed to provide her with a
reasonably safe workplace. (1)
 A bench trial was held on June 7 and June 21, 1993. The evidence
presented at trial indicated that Tindle had slipped in water that another employee had spilled on
the floor. On June 25, 1993, the trial court awarded Tindle $366,396.00 in actual damages and
$140,032.80 in prejudgment interest. 

 ALT appeals, raising seven points of error: (1) the trial court erred in denying
ALT's request for a continuance to permit the testimony of a witness; (2) the trial court erred in
admitting the testimony of another witness; (3) the trial court erred in excluding and disregarding
the testimony of one witness; (4) the trial court erred in failing to grant a new trial based on newly
discovered evidence; (5) there was no evidence or insufficient evidence to support the trial court's
judgment and findings that ALT knew of a dangerous condition on the premises; (6) the trial court
erred in calculating prejudgment interest; and (7) the trial court's errors require reversal under
the doctrine of cumulative error.



DISCUSSION 


 In ALT's first four points of error, it complains that the trial court abused its
discretion in various ways. In determining whether the trial court has abused its discretion, we
must examine whether the court's decision was arbitrary, unreasonable, or without reference to
any guiding rules and principles. Morrow v. H.E.B., Inc., 714 S.W.2d 297, 298 (Tex. 1986);
Landry v. Travelers Ins. Co., 458 S.W.2d 649, 651 (Tex. 1970). The trial court does not abuse
its discretion if it makes a rational decision in light of the information it has available. Landon
v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 938 (Tex. App.--Austin 1987, no writ). With these
principles in mind, we now review ALT's complaints. 

 ALT alleges in its first point of error that the trial court abused its discretion by
refusing to grant a continuance or a recess in order to allow ALT to present the live testimony of
William Antao, the director of Manor Oaks at the time of Tindle's injury. Although parts of
Antao's deposition previously had been read into evidence during the trial, ALT argues that his
live testimony was necessary to counter the testimony of one of Tindle's witnesses, Steven Blythe. 
Blythe testified that Antao had admitted that Tindle's slip was caused by water on the floor and
that Antao had been informed that an ALT employee had admitted spilling water on the floor
where the injury occurred. Blythe also testified that Linda Griffith, a former ALT employee, had
admitted to Blythe that she spilled the water. (2) 

 The gist of ALT's argument is that Antao's live testimony became essential because
of Blythe's highly prejudicial testimony. At approximately four p.m. on June 21, 1993, after
Blythe testified, ALT telephoned Antao, who was living in Bastrop, Texas, and asked him to
testify. Antao agreed, but because of a flash flood that closed the highway between Bastrop and
Cameron, he was unable to appear. Antao's post-trial affidavit established that a police officer
at the closed highway told him to take an alternate route, but by the time he returned to the
junction of this route, it was six p.m. Assuming that the court had recessed for the day, Antao
returned home. He did not call the courthouse to inform the trial court of his difficulties. The
trial actually continued until eight p.m. that night, whereupon ALT moved for a recess because
Antao had not arrived. The trial court denied ALT's motion, both parties rested, and the evidence
was closed. 

 ALT argues that Antao's absence was excusable and unavoidable and, therefore,
the trial court abused its discretion by denying the motion for a recess or a continuance. ALT
alleges that Antao could have testified as the custodian of records that Linda Griffith was not a
Manor Oaks employee at the time that the accident occurred and, thus, she could not have spilled
water on the floor. This evidence would have contradicted Tindle's evidence of an essential
element of her claim--that an ALT employee was aware that there was water on the floor before
Tindle's injury occurred. See Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983);
Taylor v. Albertsons, Inc., 814 S.W.2d 83, 85 (Tex. App.--Corpus Christi 1991, writ denied)
(holding that in an action for a defective condition on the premises, plaintiff must show defendant
had actual or constructive knowledge of the condition). 

 The decision to grant a continuance rests within the sound discretion of the trial
court and will not be disturbed on appeal unless there is clear abuse of such discretion. 
Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex. 1963); City of Gatesville v. Truelove, 546
S.W.2d 79, 82 (Tex. Civ. App.--Waco 1976, no writ). Tindle argues that the trial court did not
abuse its discretion in refusing to grant a recess or a continuance because ALT failed to make the
requisite showing under Texas Rule of Civil Procedure 252 that it exercised due diligence to
procure Antao's testimony before the court. See Tex. R. Civ. P. 252 (party must make an
affidavit that the witness' testimony is material and that the party has used due diligence to
procure the witness' testimony). Although a party is allowed to make an oral motion for a
continuance, the appellate court in that situation must presume that the trial court did not abuse
its discretion in overruling the motion. Watkins v. Douglass, 614 S.W.2d 892, 896 (Tex. Civ.
App.--Texarkana 1981, no writ); Rainwater v. Haddox, 544 S.W.2d 729, 731 (Tex. Civ.
App.--Amarillo 1976, no writ).

 With this presumption in mind, we conclude that the trial court did not abuse its
discretion in refusing to grant a recess or a continuance. The trial was held on two separate dates,
June 7 and June 21, 1993. The trial court warned the parties after the first day that the trial had
to be completed on June 21 because the court had a jury trial set for the following day. Both
parties agreed to this condition. On June 21, Antao was telephoned at four p.m. and stated that
he was leaving for the courthouse immediately. Although the rain prevented him from arriving
as quickly as would normally be possible, Antao never called the courthouse to explain his delay
or to ascertain whether the trial court would be willing to wait for him to arrive. If Antao had
notified the court of his delay, he would have discovered that the trial was still continuing; the
trial court did not end the evidentiary phase of the trial until almost eight p.m. that evening. 
Based on the information available to the trial court, Antao had been notified at four p.m. that his
testimony was needed and had stated that he was leaving immediately; yet he had neither arrived
nor called to explain his delay in the four hours after he was notified. The court's decision was
rational in light of the circumstances and did not constitute an abuse of discretion. Landon, 724
S.W.2d at 938. We overrule ALT's first point of error.

 ALT argues in its second point of error that the trial court erred in admitting
Blythe's testimony regarding Antao and Linda Griffith. ALT argues that the inflammatory nature
of Blythe's testimony and the fact that his testimony was "patently false" make the trial court's
admission of his testimony erroneous. ALT principally complains that the trial court committed
harmful error by allowing Blythe to testify that Antao used racial epithets to describe Tindle; that
Antao instructed Doris Hargers, a nurse, in her deposition to "make it sound like that Mrs. Tindle
was lifting incorrectly and doing it by herself and that she had not slipped"; and that the trial court
erred in allowing Blythe's incompetent hearsay testimony concerning Griffith's confession that
she spilled the water.

 Tindle initially responds that the evidence concerning the racial epithet was relevant
or, alternatively, even if it was irrelevant, the trial court did not consider Antao's professed
attitude toward Tindle in rendering judgment. When a cause is tried without a jury, even if
hearsay is improperly admitted, we presume that the trial court disregarded incompetent evidence
in rendering its judgment. Graham v. Graham, 584 S.W.2d 938, 941 (Tex. Civ. App.--Waco
1979, no writ); see also Baxter v. Texas Dep't of Human Resources, 678 S.W.2d 265, 267 (Tex.
App.--Austin 1984, no writ). A review of the court's judgment does not indicate that the alleged
racial epithets played a part in the trial court's decision. 

 Similarly, ALT argues that the trial court erred by admitting Blythe's testimony
regarding statements by Doris Hargers concerning Antao's request that Hargers change her
deposition testimony. ALT further contends that the admission of Griffith's oral statement to
Blythe was harmful error because the trial court relied on it in reaching its decision. ALT argues
that the statements were inadmissible hearsay since they were neither statements by a party
opponent nor declarations against interest. Admissions by an employee of a party opponent are
not hearsay if the employee's statement concerns a matter within the scope of the employee's
employment, and is made during the existence of the employment. Tex. R. Civ. Evid.
801(e)(2)(D). Hargers' statement clearly qualifies as an admission by a party opponent because
she made it to Blythe while she was employed at Manor Oaks, and it concerned a matter within
the scope of her employment. ALT argues, however, that since evidence exists that Griffith was
not employed at the time of Tindle's injury, her admission cannot be treated as an admission by
ALT. We disagree. The rule provides that the statement must be one that concerns a matter
within the scope of the employment and is made during the course of the employment relationship. 
Blythe testified that Griffith made this statement to him during the course of her employment. 
Whether she was actually employed at the time the injury occurred is not the critical inquiry in
determining the admissibility of this evidence. Griffith made the statement during the course of
her employment, and it concerned a matter within the scope of that employment. Therefore, it
was not an abuse of discretion for the trial court to determine that Griffith's confession was not
hearsay. 

 Even if we were to conclude that Griffith's statement was not an admission by a
party opponent, the trial court could have determined that Griffith's statement was a declaration
against interest. Tex. R. Civ. Evid. 803(24). ALT contends that, since the employment records
indicate that Griffith was not employed when Tindle's injury occurred, any statement Griffith
made was not a declaration against interest because it did not place her at risk of losing her job. 
ALT's focus on Griffith's employment is too narrow. The rule defines a statement against interest
as one that is "contrary to the declarant's pecuniary or proprietary interest, or [tends to] subject
him to civil or criminal liability . . . ." Id. Clearly, Griffith's confession could have exposed her
to civil liability and could have been against her pecuniary interest because Tindle could have sued
her individually for the injuries she incurred. Because Blythe's testimony concerning Griffith's
confession could fall within either of these exceptions, the trial court did not abuse its discretion
in admitting it. (3)

 In its third point of error, ALT contends that the trial court erred in excluding the
testimony of Carol Lewin regarding Griffith's employment. Lewin, the assistant director of
nursing at Manor Oaks, was on duty the day Tindle was injured. During her testimony, she
recalled that Griffith was not working that day. During cross-examination, however, Tindle's
attorney questioned Lewin regarding whether she had personal knowledge that Griffith was not
working the day the accident occurred. Lewin admitted that she lacked personal knowledge, but
based on the time sheets for February 26, 1989, she had concluded that Griffith was not working
at Manor Oaks on the day of the accident. Although ALT originally planned to have Antao testify
concerning authenticity and the business records exception for the employment records, ALT later
recalled Lewin to the stand once it became apparent that Antao would not appear. Lewin began
testifying that she had trained Griffith in August 1989 and since employee training always occurs
on the first day of employment, Griffith could not have been employed at Manor Oaks when the
accident occurred. 

 The contrast between Lewin's earlier testimony and her unequivocal statements that
Griffith was not employed at the time of Tindle's accident aroused the trial court's suspicion, and
the court asked ALT's attorney who had been coaching Lewin. The attorney responded that he
had asked Lewin to review the personnel files. The trial court then began to question Lewin
regarding the change in her testimony, and ALT's attorney admitted that Patrick Felan, ALT's
risk management therapist, had brought the records to Lewin. The trial court then confronted
Lewin regarding whether she was aware that "the Rule" had been invoked. Tex. R. Civ. P. 267; (4)
Tex. R. Civ. Evid. 614 ("At the request of a party the court shall order witnesses excluded so that
they cannot hear the testimony of other witnesses, and it may make the order on its own
motion."). Lewin acknowledged that the court had instructed her not to discuss her testimony
with anyone except the attorneys. Consequently, Tindle's attorney argued that the Rule had been
violated because Felan, who was not an attorney in the case, had provided Lewin with the
employment records. Because of Lewin's violation, the trial court excluded her testimony
regarding the employment records. 

 ALT argues that the trial court abused its discretion by excluding Lewin's
testimony and that this exclusion is harmful error because her testimony concerned an essential
element in the case. As an initial matter, the record is unclear as to whether the trial court ever
invoked the Rule. ALT contends that since the record does not indicate that Lewin was instructed
on the Rule, she was unaware that she was prohibited from discussing the case with any individual
other than the participating attorneys. Tindle responds that the record contains evidence that the
Rule was invoked: Lewin's testimony that she was so instructed at the beginning of the trial. The
record must indicate that the witnesses were placed under the Rule, and a party's uncorroborated
recollection on appeal of what transpired at trial is not sufficient to establish that the Rule was
actually invoked. Pierson v. Noon, 814 S.W.2d 506, 508-09 (Tex. App.--Houston [14th Dist.]
1991, writ denied). ALT argues that the record is devoid of any evidence to support the trial
court's exclusion based on the Rule. We disagree. In contrast to Pierson, in which the appellate
court found no evidence in the record that the Rule had been invoked, the record here contains
Lewin's admission that the trial court had specifically instructed her not to discuss her testimony
with anyone other than a participating attorney. Lewin's recollection is sufficient evidence of the
Rule's invocation. (5) 

 At trial, Lewin denied that she had spoken with anyone about the case, and asserted
that she had merely reviewed the personnel files. Although the Rule does not prohibit a witness
from refreshing her recollection, the record clearly indicates that the trial court did not believe
Lewin's testimony that she found the essential portions of the record without Felan's assistance. 
The trial court is the sole judge of the credibility of witnesses. Jim Walter Homes, Inc. v.
Gonzalez, 686 S.W.2d 715, 718 (Tex. App.--San Antonio 1985, writ dism'd); Johnson v. Buck,
540 S.W.2d 393, 401 (Tex. Civ. App.--Corpus Christi 1976, writ ref'd n.r.e.). We decline to
hold the trial court's conclusion that Lewin violated the Rule as an abuse of discretion. When a violation of the Rule occurs, a trial court, in its discretion, may bar the
testimony of the violating witness. Southwestern Bell Tel. Co. v. Johnson, 389 S.W.2d 645, 647-48 (Tex. 1965). We are not permitted to substitute our judgment for that of the trial court, and
we may reverse only upon a finding that the trial court's decision was so arbitrary and
unreasonable as to constitute a manifest abuse of discretion. Pierson, 814 S.W.2d at 509; Triton
Oil & Gas Corp. v. E.W. Moran Drilling Co., 509 S.W.2d 678, 684 (Tex. Civ. App.--Fort Worth
1974, writ ref'd n.r.e.). ALT argues that our inquiry on appeal should be whether Lewin's
testimony concerned a focal issue in the case, such that its exclusion leaves unchallenged a critical
issue in Tindle's case. See CNA Ins. Co. v. Scheffey, 828 S.W.2d 785, 790 (Tex.
App.--Texarkana 1992, writ denied) (exclusion of reputational evidence was error where the
exclusion distorted the case, even though the whole case did not turn on this issue). We believe,
however, the sounder approach is to adopt the general standard that rulings on questions of
excluding evidence will not be reversed unless the appellant demonstrates that the whole case turns
on the evidence excluded. Guerrero v. Smith, 864 S.W.2d 797, 801 (Tex. App.--Houston [14th
Dist.] 1993, no writ); Texaco, Inc. v. Pennzoil, Co., 729 S.W.2d 768, 837 (Tex. App.--Houston
[1st Dist.] 1987, writ ref'd n.r.e.), cert. dism'd, 485 U.S. 994, 108 S. Ct. 1305, 99 L. Ed.2d 686
(1988). The whole case did not turn on Lewin's testimony about the records. If the evidence had
been introduced, it would have bolstered Lewin's earlier testimony that she did not believe
Griffith was employed at the time Tindle's injury occurred. The trial court, however, would still
have to balance Lewin's testimony against that of Blythe and other witnesses. Accordingly, the
trial court did not abuse its discretion in excluding Lewin's testimony, and we overrule ALT's
third point of error.

 ALT's fourth point of error alleges that the trial court erred in failing to grant a
new trial on the basis of newly discovered evidence. ALT contends that Tindle may have
withheld information regarding Griffith's location before trial in violation of her duty to
supplement discovery. Tindle did not provide an address for Griffith or indicate that Griffith had
made the admission that Blythe testified about at trial. ALT argues that if Griffith's location had
been provided, ALT could have deposed or subpoenaed her to refute Blythe's testimony. Tindle
responds that she had no knowledge of Griffith's location before trial and that, for two years prior
to trial, ALT had Tindle's answers to interrogatories which indicated that Griffith was a person
who "may have knowledge of the origination of the wet substance on the floor at the time of the
incident." Tindle argues that ALT was unaware of Griffith's confession before trial because of
its lack of diligence in pursuing discovery and, thus, there was neither newly discovered evidence
in the case nor any abuse of the discovery process by Tindle.

 ALT's complaint arises from an affidavit Griffith signed on September 14, 1993,
which refuted an earlier affidavit she signed on June 24, 1993. (6) The September 14 affidavit states
that an individual approached Griffith a few days after trial to question her about Tindle's
accident. ALT contends that, if that individual was acting on Tindle's behalf, Tindle was aware
of Griffith's whereabouts and abused discovery by failing to disclose this information before trial. 
Therefore, according to ALT, the trial court abused its discretion by failing to grant a new trial,
which would have permitted Griffith to testify that she was not employed by Manor Oaks at the
time Tindle's injury occurred. ALT offers nothing more than conjecture to support its claim that
a new trial should have been granted because Tindle withheld evidence: "If Appellee knew where
was Griffith was, the failure to disclose her identity was a violation of the rules of discovery." 
ALT presented no evidence that Tindle was aware of Griffith's location before trial, and Griffith
did not sign the first affidavit until three days after the trial ended. We refuse to hold that the trial
court's refusal to grant a new trial was an abuse of discretion, and we overrule ALT's fourth point
of error. 

 In its fifth and sixth points of error, ALT raises factual and legal sufficiency
challenges to the trial court's findings of fact. We attach to findings of fact the same weight that
we attach to a jury's verdict upon jury questions. City of Clute v. City of Lake Jackson, 559
S.W.2d 391, 395 (Tex. Civ. App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact
are reviewable for legal and factual sufficiency of the evidence by the same standards used to
review jury findings. Okon v. Levy, 612 S.W.2d 938, 941 (Tex. Civ. App.--Dallas 1981, writ
ref'd n.r.e.) (citing Hall v. Villareal Dev. Corp., 522 S.W.2d 195 (Tex. 1975)). 

 An appellant who challenges the legal sufficiency of the evidence supporting an
issue upon which it did not have the burden of proof must demonstrate that there is no evidence
to support the adverse finding. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d
264, 275 (Tex. App.--Amarillo 1988, writ denied). In reviewing a no-evidence point, we consider
only the evidence supporting the finding, and we disregard all evidence to the contrary. Best v.
Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). If there is any evidence supporting
the finding, we must overrule the point and uphold the finding.

 When challenging the factual sufficiency of the evidence supporting an adverse
finding upon which it did not carry the burden of proof, an appellant must demonstrate that there
is insufficient evidence to support the adverse finding. Maxus Exploration Co., 766 S.W.2d at
275-76. We will consider and weigh all the evidence in support of and contrary to the finding. 
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). The contested finding will
be upheld unless we find that (1) the evidence is too weak to support the finding, or (2) the finding
is so against the overwhelming weight of the evidence as to be manifestly unjust. Garza v. Alviar,
395 S.W.2d 821, 823 (Tex. 1965). We will not substitute our judgment for that of the trier of
fact merely because we reach a different conclusion. Otis Elevator Co. v. Joseph, 749 S.W.2d
920, 923 (Tex. App.--Houston [1st Dist.] 1988, no writ). 

 ALT complains in its fifth point of error that there was no evidence or insufficient
evidence to support the trial court's finding of fact that ALT was aware of a dangerous condition
on the premises before Tindle's accident occurred. Finding of Fact No. 3 provided: "One or
more negligent acts and/or omissions of Linda Griffith or another ALT employee or other ALT
employees, while in the course of employment by ALT, proximately caused the dangerous
condition(s) . . . ." To prevail, Tindle had to prove that ALT had actual or constructive
knowledge of the water spilled on the floor. See Taylor, 814 S.W.2d at 85. As a result of its
failure to carry worker's compensation insurance, ALT is prevented from asserting the defense
that another employee caused the negligence that resulted in the injury. Workers' Compensation
Act, 71st Leg., 2d C.S., ch. 1, § 3.03, 1989 Tex. Gen. Laws 1, 14-15 (Tex. Rev. Civ. Stat. Ann.
art. 8308-3.03, § (a)(3), since repealed). 

 ALT argues that the trial court's finding was based exclusively on Blythe's
testimony, which was clearly contradicted by the employment records. Tindle responds that based
on the definition of "knowledge" articulated in Taylor, the record provides sufficient evidence of
ALT's knowledge to overcome both the legal and factual sufficiency hurdles. In Taylor, the
appellate court noted:



The issue here goes to the actual or constructive knowledge of the presence of [the
substance]. It is generally considered that a plaintiff can show knowledge of the
danger in one of three ways: 1. That the defendant knew the substance was on the
floor and willfully or negligently failed to remove it (actual knowledge); 2. That
the substance had been on the floor for so long that it should have been discovered
(constructive knowledge); and 3. That the defendant had "placed" the substance on
the floor.



Taylor, 814 S.W.2d at 85 (citing H.E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501, 502 (Tex.
Civ. App.--San Antonio 1949, writ ref'd n.r.e.)). Tindle contends that ALT either knew that the
water had been spilled on the floor and negligently failed to remove it or that ALT actually placed
the substance on the floor. 

 Although Blythe's testimony is the principal evidence of the former alternative,
Tindle alleges that Doris Hargers' testimony sufficiently establishes that ALT "placed" the
substance on the floor. Hargers, a licensed vocational nurse at Manor Oaks during the period
when Tindle was injured, testified that she noticed the water on the floor when she inspected the
room after the accident; (7) that the patient, Mrs. Reimer, was totally incapacitated and did not have
the ability to pour her own water; that an aide had to pour water for Mrs. Reimer; and that no one
ever visited Mrs. Reimer when she lived in Manor Oaks. Even if we disregard the testimony of
Blythe because of its inconsistency with the employment records, Hargers' testimony provides
some evidence to support the trial court's finding. The evidence does tend to establish that the
spilled water resulted from the negligence of an ALT employee, thus it fulfills the Taylor
requirement that ALT "placed" the substance on the floor. 

 In its findings of fact, the trial court does not specify on what theory it relied in
determining that ALT had the requisite knowledge; it merely finds that either the acts or omissions
of Griffith or some other ALT employee proximately caused the dangerous condition and that "in
creating and/or allowing the dangerous conditions . . . ALT failed to provide Plaintiff with a
reasonably safe place to work." (Emphasis added.) ALT offered no evidence to rebut Hargers'
testimony regarding the improbability that anyone other than a nurse's aide could have spilled the
water. ALT also offered little evidence to rebut Blythe's claim regarding Griffith's admission of
spilling the water. We conclude that the evidence presented at trial was legally and factually
sufficient to support the trial court's judgment, and overrule ALT's fifth point of error.

 In ALT's sixth point of error, it alleges the trial court erred in computing the award
of prejudgment interest. The statute provides for the award of prejudgment interest in personal
injury cases:



Judgments in wrongful death, personal injury, and property damage cases must
include prejudgment interest. . . . [P]rejudgment interest accrues on the amount
of the judgment during the period beginning on the 180th day after the date the
defendant receives written notice of a claim or on the day the suit is filed,
whichever occurs first, and ending on the day preceding the date judgment is
entered.



Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(a) (West Supp. 1994) (emphasis added). The trial
court awarded Tindle prejudgment interest for the period beginning on August 26, 1989, 180 days
after the accident occurred. ALT argues that the accrual period should have begun on February
1, 1991, the date that Tindle's suit was filed, because the record contains no evidence to support
the trial court's finding of fact and conclusion of law that ALT received notice of the claim on
February 26, 1989, the date of Tindle's injury. (8) 

 Although the record indicates that Tindle had to submit an incident report the day
of the accident in which she detailed her injury and which indicated that she had received medical
treatment, we disagree with Tindle's assertion that this report was sufficient to establish ALT
received "written" notice of her claim on February 26, 1989. ALT's assertion that the record
contains no evidence that ALT had notice of a claim before the date suit was filed, however, is
also incorrect. The record includes evidence that Tindle received treatment for lower back strain
on February 26, 1989, that an "insurance claim" for this injury was filed on March 1, 1989, and
that Advanced Living Technologies paid the bill for that treatment on March 20, 1989. We
conclude that this document provides some evidence that ALT had notice of Tindle's claim at least
by March 20, 1989. The document indicates that ALT had notice that Tindle was holding it
responsible for her medical expenses, and that ALT had accepted this responsibility by remitting
payment for the emergency room care. Therefore, the trial court did not err in ruling that the
accrual period began before Tindle's lawsuit was filed on February 1, 1991. However, we sustain
ALT's sixth point of error, and modify the judgment to reflect that prejudgment interest accrued
180 days after March 20, 1989, the date ALT received notice of Tindle's claim. 

 In its seventh point of error, ALT contends the trial court's errors require reversal
under the doctrine of cumulative error. Having concluded that the trial court erred only as to the
calculation of the accrual period of the prejudgment interest, we need not address this point.



CONCLUSION 


 Because the trial court erred only in its determination of the accrual period for the
prejudgment interest, we modify the judgment to reflect that prejudgment interest accrued 180
days after March 20, 1989 and, as modified, we affirm the trial court's judgment.





 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Modified and, as Modified, Affirmed

Filed: November 9, 1994

Do Not Publish 
1. Before Tindle's injury occurred, ALT had ceased carrying workers' compensation
insurance, thus making Tindle's suit against ALT one for common-law negligence. Workers'
Compensation Act, 71st Leg., 2d C.S., ch. 1, § 3.04, 1989 Tex. Gen. Laws 1, 15 (Tex. Rev.
Civ. Stat. Ann. art. 8308-3.04, since repealed).

2. Blythe further accused Antao of telling another ALT employee to testify in her deposition
that Tindle was injured because she improperly lifted the patient, of referring to Tindle as a
"lazy nigger," and of trying to get a full work-release for Tindle from an orthopedic surgeon
so that they could work Tindle "so hard that if she couldn't do it she would quit."
3. The crux of ALT's complaint appears to be that Blythe perjured himself on the stand,
and, thus, the trial court erred in admitting this testimony. The correct method to show that a
witness is committing perjury is to impeach the witness on the stand. Failing to do so, ALT
cannot now argue that the trial court erred in allowing Blythe to testify.
4. Rule 267 provides in pertinent part:


 a. At the request of either party, in a civil case, the witnesses . .
. shall be sworn and removed out of the courtroom to some place
where they cannot hear the testimony as delivered by any other
witness in the cause. This is termed placing witnesses under the
rule.


 . . . .


 d. Witnesses, when placed under Rule 614 of the Texas Rules of
Civil Evidence, shall be instructed by the court that they are not
to converse with each other or with any other person about the
case other than the attorneys in the case, except by permission of
the court . . . .


Tex. R. Civ. P. 267 (emphasis added).
5. ALT also argues that, even if the Rule had been invoked, no violation occurred because
Lewin did not discuss the case with other witnesses. See Southwestern Bell Tel. Co. v.
Johnson, 389 S.W.2d 645, 649 (Tex. 1965) (Walker, J., dissenting) ("The practice of
separating witnesses is an ancient expedient designed to prevent one witness from being taught
by the testimony of another."). Contrary to ALT's assertion, however, the Rule also prohibits
a witness from discussing the case with anyone who is not an attorney in the case. Tex. R.
Civ. P. 267(d). 
6. The June 24 affidavit stated that Griffith was employed by Manor Oaks during the time
Tindle was injured. The September 14 affidavit specifically denies that Griffith signed the
earlier affidavit. Griffith states in the latter affidavit that a woman questioned her concerning
Tindle's injury a few days after the trial, but that the only document Griffith signed for her
was a meal receipt. The affidavits were before the trial court as part of ALT's motion for new
trial based on newly discovered evidence. See Tex. R. Civ. P. 324(b)(1) (to complain on
appeal about newly discovered evidence, the point first must be included in a motion for new
trial).
7. Her discovery of the water does not show that ALT had actual knowledge of the spill
and negligently failed to remove it because Hargers' discovery occurred after the accident.
8. The trial court's Finding of Fact no. 2 stated: "On or about February 26, 1989, ALT
received notice of Plaintiff's injury(ies) and the factual basis of her potential claims against
ALT." Conclusion of Law no. 4 stated: "On or about February 26, 1989, ALT received
written notice of Plaintiff's claim(s) against ALT."