**Don GREEN and Alma Green, Individually, and As Next Friend for Jerry Dale Green, a Minor, Appellants,**

v.

**KIMBELL, INC., Appellee.**

**No. 2–82–090–CV.**

Court of Appeals of Texas,
Fort Worth.

March 3, 1983.

Rehearing Denied March 17, 1983.

Branson & Misko and Paul N. Gold, Dallas, for appellants.

Cantey, Hanger, Gooch, Munn & Collins and Richard L. Griffith, Rod Patterson, Fort Worth, for appellee.

Before HUGHES, JORDAN and ASHWORTH, JJ.

## OPINION

JORDAN, Justice.

This is a "slip and fall" case in which the trial court directed a verdict for defendant at the close of plaintiffs' evidence. Appellants, plaintiffs in the trial court, appeal on one point of error.

We reverse and remand.

On March 22, 1976, Jerry Dale Green accompanied by his brother, Steve, were in Buddies Supermarket in Graham, Texas, a store then owned by appellee, when Jerry slipped and fell on what was described by his brother as a film of dirty water running beside an ice machine and along the length of a produce rack, out into an aisle in the store. The evidence reveals that the ice machine was located right next to the "produce rack", and that extending out from the "produce rack" and lying on the floor at the end of the "produce rack" was a hose, apparently used to water the produce. The ice machine was the type that held bags of ice for sale to customers. The evidence will be discussed in more detail later in this opinion.

The evidence also shows that Jerry Green suffered severe injuries from this fall, which required several operations.

Appellants' sole point of error is that the trial court erred in withdrawing the case from the jury and directing a verdict for the appellee because reasonable inferences, supporting vital facts on ultimate issues, could have been drawn from the facts which were produced.

In reviewing the action of the trial court in this case, we have one question before us: Was there any evidence of probative force, or, put another way, evidence that amounted to more than a scintilla or a mere suspicion, from which a reasonable inference could be drawn by reasonable men and

women, that the appellee knew, or should have known, of the existence of the dirty water on the floor of its store? We hold that there was such evidence and that the trial court erred in instructing a verdict for appellee.

Since this is a directed verdict case, this court is required to review the evidence in its most favorable light in support of the finding of the vital fact to support appellants' cause of action, considering only the evidence and the inferences which support such finding and rejecting the evidence and the inferences which are contrary to that finding. We are also required to disregard all contradictory evidence favorable to the movant appellee. See Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 363 (1960); 3 R. McDonald, Texas Civil Practice in District and County Courts § 11.28.1 (rev. 1970); *Briones v. Levine's Department Store, Inc.*, 446 S.W.2d 7 (Tex.1969); *Stuckey v. Union Mortgage & Investment Company*, 383 S.W.2d 429 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.).

In order to establish liability against the appellee, owner-operator of the store in which Jerry Green fell, it was necessary for appellants to show one of the following: (1) that the appellee put the foreign substance (water in this case) upon the floor; or (2) that the appellee knew the foreign substance was on the floor and willfully or negligently failed to remove it; or (3) that the foreign substance had been upon the floor for such a period of time that it would have been discovered and removed by appellee, or its employees, had appellee exercised ordinary care.

In this case, as in most "slip and fall" cases, the appellants must bring themselves, if at all, within category number three above. They must show that there was probative evidence in the record which would raise a reasonable inference that the water was on the floor a sufficient length of time to have been discovered and removed by appellee. We think there is such evidence.

The evidence shows that at the time he fell, Jerry Green was walking, barefooted, toward his older brother, Steve, in appellee's Graham Store. Jerry's feet suddenly flew out from under him and he fell on his back on the floor. Steve Green testified that Jerry fell in a "film of water running alongside the produce rack, the length of the produce rack ... and there was an ice machine there, too." He also testified that the water in which Jerry fell was "nasty ... filthy and quite dirty ... and that it had cart tracks, more than one set of shoe marks and Jerry's heel mark in the water where the debris had separated when his foot slipped."

Lorene Houser, who was in the store at the time and who actually saw Jerry fall, testified that "There was water on the floor and there was a black mark. I don't know whether it was mud off someone's feet or off a cart, the grocery cart wheels." She also said, when asked to describe the substance on the floor, that "It was kind of dirty. It looked more like just liquid. I know it had marks. I don't know whether it was dirt or the marks off a cart wheels."

Don Green, Jerry's father, a master plumber, who visited the store after Jerry fell, said some of the drains in the produce area had backed up, and he saw dirty, nasty water all over the floor.

Jerry Dale Green testified that as he was walking down the aisle, he felt something wet under his foot, his right foot slipped out from under him and he fell backwards. He did not see, and did not know, what he fell in.

In urging its motion for directed verdict, appellee contended that appellants had failed to produce any probative evidence establishing how or when the dirty water got on the appellee's floor and therefore had produced no evidence that appellee knew or should have known of the existence of a dangerous condition on its premises. Appellee contended that all the evidence showed was that at the time Jerry fell there was some dirty water on the floor.

In *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059, 1063 (Tex.1898) the Supreme Court

enunciated the principles governing review of an instructed verdict:

"(1) ... it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force."

█ It is well settled that a premises owner owes a business invitee the duty to exercise ordinary care in keeping its premises in a reasonably safe condition so that the invitee is not injured. *Carlisle v. J. Weingarten, Inc.,* 137 Tex. 220, 152 S.W.2d 1073 (Tex.1941). This includes a duty of the occupier to inspect and to discover dangerous conditions. *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex.1963). The question of whether or not the plaintiff in a slip and fall case had produced sufficient evidence to go to the jury on the matter of whether the owner-occupier of premises has breached that duty of ordinary care to his business invitee, of necessity, depends on the facts of each case. But there are cases which hold that the general duty of a premises owner to inspect is enhanced and increased in those situations where the owner should be aware of a greater possibility of the existence of a dangerous condition. In slip and fall cases these situations have included such things as coke machines, ice keepers, and "icee" dispensers.

█ The fact situation in this case is at least similar to the fact situation in the following cases, all of which seem to indicate that if a plaintiff has slipped in muddy, dirty or filthy water, that that fact is some evidence that the water was on the floor long enough for the premises owner to have discovered and removed it: *H.E. Butt Grocery Co. v. Johnson,* 226 S.W.2d 501 (Tex. Civ.App.—San Antonio 1949, writ ref'd n.r. e.); *Goodson v. Southland Corporation,* 454 S.W.2d 823 (Tex.Civ.App.—El Paso 1970,

writ ref'd n.r.e.); *Albertson's, Inc. v. Mungia,* 602 S.W.2d 359 (Tex.Civ.App.—Corpus Christi 1980, no writ); *H.E.B. Food Stores v. Slaughter,* 484 S.W.2d 794 (Tex.Civ.App.—Corpus Christi 1972, writ dism'd).

In the *Slaughter* case, the plaintiff slipped and fell on some grapes and water, and the Corpus Christi court said:

"The plaintiff was the only witness to testify in the case. She testified that the puddles of water were dirt streaked as if someone had swept through the water. We believe that a proper inference can be based upon this evidence that the defendant knew the water was on the floor or that it had been there long enough so that the defendant should have known about it. *H.E. Butt Grocery Company v. Johnson,* 226 S.W.2d 501 (Tex.Civ.App.—San Antonio 1949, n.r.e.). The very nature of water is, that ordinarily men know that dirt streaks are not naturally inherent in water. In order for dirt streaks to be present, it must be adduced, that either the water was tampered with by sweeping through it, *or the water was allowed to remain on the floor a sufficient length of time so that outside particles of dust and dirt could accumulate in the water, thereby causing streaking conditions.* See *Furr's, Inc. v. Bolton,* 333 S.W.2d 688 (Tex.Civ.App.—El Paso 1960)." [Emphasis added.]

*H.E.B. Food Stores v. Slaughter, supra,* at 797.

In *H.E. Butt Grocery Co. v. Johnson, supra,* at 503, the plaintiff fell in a liquid upon the floor, probably the contents of a broken Coca-Cola or pop bottle. There was an ice box containing bottles of soft drinks. Mrs. Johnson testified that the wet spot on the floor on which she fell was sticky, wet and muddy. In this she was corroborated by other witnesses, who testified that when Mrs. Johnson was helped from the floor her dress was muddy and that the wet spot itself was dusty, grimy and muddy. "From this testimony, the inference can properly be drawn that a liquid, either water or the contents of a soft drink bottle, had been allowed to remain upon the floor for some

length of time." The court in *Johnson* also went on to say:

'The serving of cold drinks generally brings with it wet spots and liquids upon the floor. Ordinary care requires that such a place be constantly watched and excess liquids removed from the floor frequently. Considering the position of the Coca-Cola box and the fact that appellant's employees were stationed near the box, the failure to discover the presence of water or other liquid on the floor near the box *for a comparatively short period of time* might properly be considered as substandard conduct by a jury, *especially in view of the fact that the presence of such liquids on the floor near the box must be considered as usual and to be expected.*" [Emphasis added.]

In *Albertson's, Inc. v. Mungia, supra,* at 362, 363, the plaintiff slipped on "a lot of water" which was clear and in front of an ice machine "sort of like a stream way down toward the cashier." In holding that the evidence in this case was sufficient to raise a reasonable inference that the water had been on the floor long enough to constitute notice of the existence thereof to defendant, the court said:

"The dispensing of bags of ice from an ice machine can bring with it water on the floor in the immediate vicinity of the machine. Ordinary care requires that such a place be constantly watched and water removed from the floor frequently. There is circumstantial evidence in this case which amply supports the jury finding that the water which caused plaintiff's fall had been on the floor of defendant's store long enough that it should have been discovered and removed by defendant in the exercise of ordinary care before the accident."

We believe that the evidence in this case, some of which we have previously recited, was of sufficient probative force to raise an inference, which could be believed by reasonable minds, that the dirty water running beside the ice machine and along the length of the produce rack, out into the aisle of the store, had been there a sufficient length of time that appellee owner either knew or should have known of its presence and should have removed it.

The cause is reversed and remanded for a jury trial.