**WAL–MART STORES, INC., Appellant,**

v.

**Selene DIAZ, Appellee.**

**No. 2–01–322–CV.**

Court of Appeals of Texas,
Fort Worth.

May 29, 2003.

Scott, Douglass & McConnico, LLP, J. Woodfin Jones, Anna M. Baker, Austin, for appellant.

Law Office of Scott H. Richard, Scott H. Richard, Brain Restivo, Bedford, for appellee.

PANEL A: CAYCE, C.J.; DAY and WALKER, JJ.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

This is a premises liability, slip-and-fall case. On July 13, 2001, the jury found appellant Wal–Mart Stores, Inc. negligent for failing to exercise ordinary care in protecting appellee Selene Diaz from dangerous conditions in its store and assessed damages at $25,000. The trial court rendered judgment accordingly, and Wal–

Mart appeals, challenging the judgment and jury verdict on the ground that there was legally insufficient evidence that it had actual or constructive knowledge of the dangerous condition. We reverse and render.

## II. FACTUAL AND PROCEDURAL BACKGROUND

While shopping at a Wal–Mart store on April 15, 1998, Diaz slipped and fell into a sitting position in the bedding aisle. After falling down, she looked around and noticed a pillow sticking out about a foot or more from the lower shelf. The pillow concealed a small McDonald's cup that was tipped over. Presumably, the cup was left by a customer who visited the McDonald's located in the Wal–Mart store. Diaz testified that near the cup was "transparent liquid." There is no evidence, however, as to how much liquid was on the floor. A lid and straw were also located inches away from the cup.

Diaz testified at trial that she did not see any ice, that she felt wetness on her arm that was sticky, and that she did not see liquid or the cup before she fell. She also stated that the liquid was clear and that there were no footprints, dirt, or cart tracks in it. Diaz did not know how long the liquid had been on the floor, and she had only been in the aisle moments before she fell.

Julie Williams, a Wal–Mart employee, testified that a customer had reported Diaz's fall to her. Williams stated that she had not walked down the aisle where Diaz fell at any time before the accident that day and did not know whether any other employees had recently inspected it. When Williams first arrived at the scene of the fall, she did not see the pillow, the cup, or the spill. Williams then called for management and a Spanish-speaking employee.

Paul Lile, a Wal–Mart manager, arrived with Rose Buentello, a Wal–Mart employee who spoke Spanish. Rose noticed a little bit of clear liquid on the floor, which was located only near where the cup lay. Rose testified that Diaz told her she had tripped over a comforter and did not see the cup that was under it. Wal–Mart then called an ambulance, which took Diaz to the hospital.

After Diaz left, Williams inspected the area where Diaz fell and saw the cup a couple of feet from where Diaz had been sitting. She said the cup was standing upright next to the shelf. The only liquid she saw was "sweat" on the cup and a "ring" around the cup. The ring of liquid was mostly clear and looked like "watered down soda."

Diaz filed suit against Wal–Mart for negligence on January 5, 1999. In her most recent pleading, she alleged that Wal–Mart was liable for the premises defect and for failing, among other things, to inspect and maintain the premises and warn about the defect, the spilled drink. Diaz also alleged that Wal–Mart was negligent in allowing its customers to carry uncovered drinks on its premises. The case went to trial on July 2, 2001. After Diaz presented her case, Wal–Mart moved for a directed verdict on the ground that Diaz had failed to present legally sufficient evidence of actual or constructive notice of the defect. The trial court denied the motion, and following Wal–Mart's defense, the jury found it one hundred percent liable for Diaz's injuries and awarded her $25,000 for past damages. After the judgment was rendered, Wal–Mart moved for judgment notwithstanding the verdict, which was also denied. Wal–Mart then appealed.

## III. PREMISES LIABILITY—
### THE SLIP & FALL CASE

The sole issue in this case is whether there was legally sufficient evi-

dence showing that Wal–Mart had actual or constructive notice of the premises defect, the spilled drink. In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez,* 937 S.W.2d at 450; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

■ A "no-evidence" issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362–63 (1960)), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992).

■ Diaz was a Wal–Mart invitee. As such, Wal–Mart owed her "a duty to exercise reasonable care to protect her from dangerous conditions in the store known or discoverable to it." *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex. 1998). This duty did not, however, make Wal–Mart an insurer of her safety. *Id.; McElhenny v. Thielepape,* 155 Tex. 319, 285 S.W.2d 940, 941 (1956). To recover damages, Diaz had to prove:

(1) Wal–Mart's actual or constructive knowledge of some condition on the premises;

(2) That the condition posed an unreasonable risk of harm;

(3) That Wal–Mart did not exercise reasonable care to reduce or eliminate the risk; and

(4) That Wal–Mart's failure to use such care proximately caused her injuries.

*H.E. Butt Grocery Co. v. Resendez,* 988 S.W.2d 218, 219 (Tex.1999); *Gonzalez,* 968 S.W.2d at 936; *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983).

■ To show that Wal–Mart had actual or constructive knowledge, Diaz had to show that Wal–Mart either: (1) put the foreign substance on the floor or (2) knew that it was on the floor and negligently failed to remove it or (3) that the substance was on the floor for so long that, in the exercise of ordinary care, it should have been discovered and removed. *Wal–Mart Stores, Inc. v. Reece,* 81 S.W.3d 812, 814 (Tex.2002); *Richardson v. Wal–Mart Stores, Inc.,* 963 S.W.2d 162, 165–66 (Tex. App.-Texarkana 1998, no pet.). The fact that the owner or occupier of a premises creates a condition that poses an unreasonable risk of harm may support an inference of knowledge. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 265 (Tex.1992). *The jury must still find, however, that the owner or occupier knew or should have known of the condition. Id.; see also Corbin,* 648 S.W.2d at 296. Making the inference as a matter of law is improper unless knowledge is uncontroverted. *Keetch,* 845 S.W.2d at 265.

Diaz relies on our opinion in *Wal–Mart Stores, Inc. v. Rangel* to argue that there

was sufficient evidence to support the jury's finding of actual and constructive notice. 966 S.W.2d 199, 202 (Tex.App.-Fort Worth 1998, pet. denied). *Rangel* involved facts almost identical to the facts in this case. Relying on *Corbin,* we held in *Rangel* that Wal–Mart's policy of allowing its customers to carry food and drink into the store created a foreseeable danger and risk of harm that Wal–Mart negligently failed to prevent by ordinary care with reasonable precautions. *Id.* The mere fact that Wal–Mart allows its customers to carry drinks in its store, however, does not, without more evidence, show a condition on the premises that poses an unreasonable risk of harm. *See Resendez,* 988 S.W.2d at 219 ("As a matter of law, ... the mere fact that a store [owner] has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm."). Under the reasoning in *Rangel,* the premises owner becomes liable not only for a dangerous condition that occurs on its premises and causes injury, but also for allowing the condition to occur. This reasoning extends the scope of responsibility for a premises owner further than contemplated by previous and subsequent slip-and-fall cases.

Recently, the Texas Supreme Court in *Wal–Mart Stores, Inc. v. Reece* held that Wal–Mart was not liable to a customer who slipped on a spill in the store snack bar where there was no evidence that the spill was conspicuous or seen by an employee before the accident and no evidence showing how long the spill had been on the floor and when and how it got there. 81 S.W.3d at 816. The court stated that in order to hold a premises owner liable for spills on its floor,

> there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn

of, the dangerous condition. Otherwise, owners would face strict liability for any dangerous condition on their premises, an approach we have clearly rejected.

*Id.* at 815. Other courts, including this one, have addressed similar situations in the same manner. *See Green v. Kimbell, Inc.,* 647 S.W.2d 110, 113–14 (Tex.App.-Fort Worth 1983, writ ref'd n.r.e.) (holding there was sufficient evidence that water from hose used on produce had been on the floor for a sufficient length of time to warrant sending issue of knowledge to the jury); *Martin Theatres of Tex., Inc. v. Puryear,* 631 S.W.2d 600, 602 (Tex.App.-Beaumont 1982, no writ) (holding that there was insufficient evidence that drink spilled by patron at movie theatre had been on the floor for such a period of time that ordinary care in making inspection would have resulted in its discovery).

■■■■ As these cases make clear, in determining whether constructive knowledge exists in the slip-and-fall case the issue is whether the substance had been on the floor for so long a time that a reasonably prudent business owner exercising ordinary care should have discovered it. The duty of the business owner is to protect invitees from dangers of which it should know in the exercise of ordinary care, "growing out of the latter's duty to inspect." *Martin Theatres,* 631 S.W.2d at 602; *see also CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 101 (Tex.2000) ("Because the core of the duty depends on actual or constructive knowledge of a dangerous condition that a reasonable inspection would reveal, ... it follows that an owner or occupier is not liable for deterioration of its premises unless it knew of or by reasonable inspection would have discovered the deterioration."). While a business owner's policy of allowing customers to carry drinks in its store makes spills foreseeable, the effect of the policy only

determines what the standard of ordinary care requires under the circumstances. The policy alone does not establish negligence.

▮ The holding in *Rangel*, however, had the effect of imputing knowledge of the actual defect based on the fact that the owner should foresee a potential defect solely because it allowed its customers to carry drinks on its premises. By doing so, this court eliminated the duties to inspect and remove, upon which premises liability is based, and made the business owner negligent even before an actual defect occurs. Because the holding in *Rangel* had this effect, we overrule it. Instead, the proper standard is to determine whether there was sufficient evidence to show that the business owner actually or constructively knew about the actual defect.

Diaz did not present any evidence that Wal–Mart or its employees created the spill that caused her to fall. There is also no evidence that a Wal–Mart employee possessed actual awareness of the spilled drink and failed to clean it up. Thus, there is no evidence of actual notice, leaving Diaz with having to show constructive notice.

▮ To prove constructive notice in this case, Diaz needed to show that the spilled drink existed for so long that Wal–Mart should have discovered it and removed it in the exercise of ordinary care. *Reece*, 81 S.W.3d at 816–17; *Gonzalez*, 968 S.W.2d at 935. This showing requires reliance on circumstantial evidence. As such,

Diaz had to establish "that it is more likely than not that the dangerous condition existed long enough to give [Wal–Mart] a reasonable opportunity to discover the condition." *Gonzalez*, 968 S.W.2d at 936.

▮ The evidence showed that Wal–Mart trained its employees to look for any potential hazards in the store and to remove them if found, regardless of where the hazards were found. There is no evidence, however, as to how long the spill had been on the floor or that it is more likely than not that the spill and cup had been on the floor for such a lengthy period of time that Wal–Mart should have discovered and removed them. Although Wal–Mart employees were trained to periodically walk around areas of the store to look for hazards, there is no evidence that an inspection of the aisle where Diaz fell did or did not occur at any time before the accident. Therefore, it is impossible based on the evidence to determine if the spill and cup had been on the aisle floor for any length of time before the accident. As a result, we cannot determine if Wal–Mart breached its duty of ordinary care by not frequently inspecting the aisle.[1] Accordingly, we hold there is no evidence to support the jury's finding that Wal–Mart had actual or constructive knowledge of the spill and sustain Wal–Mart's sole issue.

## IV. CONCLUSION

Having sustained Wal–Mart's no-evidence issue, it is our duty to render judgment for Wal–Mart because that is the

---

1. Although it is difficult to prove whether a breach occurred, the difficulty in proving the elements of a cause of action does not relieve the plaintiff of its obligation to do so. *See Gonzalez*, 968 S.W.2d at 937 ("However, '[t]he fact that proof of causation is difficult does not provide a plaintiff with an excuse to avoid introducing some evidence of causation.' ") (quoting *Schaefer v. Tex. Employers' Ins. Ass'n*, 612 S.W.2d 199, 205 (Tex.1980)); *Wal–Mart Stores, Inc. v. Gonzalez*, 954 S.W.2d 777, 784 (Tex.App.-San Antonio 1997) ("'[T]he harsh reality is that if the plaintiff cannot prove facts to support her cause of action, there is simply no recovery.") (Angeline, J., dissenting), *rev'd*, 968 S.W.2d 934, 937 (Tex. 1998) (relying on the dissent).

judgment the trial court should have rendered.[2] *See* Tex. R. App. P. 43.3; *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176, 176 (Tex.1986) (quoting *Nat'l Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969)). Thus, we reverse the trial court's judgment and render judgment for Wal–Mart.

## WALKER, J. filed a dissenting opinion.

**2.** The dissent contends that the case should be remanded because Diaz relied on our opinion in *Rangel* in pleading and proving her case and because the trial court also relied on that opinion in denying Wal–Mart's motion for judgment notwithstanding the verdict. A remand would be appropriate, however, only if the burden of proof for liability under *Rangel* was *higher* than the standard established by the supreme court in *Reece* and Diaz lost in the first trial because she did not have the benefit of the lower burden of proof. In such a case, Diaz would be entitled to an opportunity to establish her claim on remand under the lower burden of proof. The burden of proof under *Rangel,* however, is *lower* than the standard established in *Reece,* and Diaz failed to present legally sufficient evidence to meet her burden of proof under *Reece's* heightened standard. Thus, remanding the case for a new trial would be a meaningless waste of judicial resources because we know from the record before us that Diaz cannot meet her burden of proof on retrial. We refuse to speculate, as the dissent apparently does, that Diaz withheld evidence in the first trial because she erroneously believed that *Rangel's* lower burden of proof applied and that she will present these undisclosed facts in a second trial on remand.

**1.** Diaz pleaded, "Defendant's actions in allowing consumers to walk through the premises with McDonald's drinks was a repeated activity. It was foreseeable that customers would spill these drinks."

**2.** Diaz's attorney elicited the following testimony from Julie Williams, a Wal–Mart employee at the time of Diaz's accident:

> Q. Now, at the Wal–Mart that you worked at, the one that we're here today about, there was a McDonald's in there, correct?
> A. Yes, sir.

### SUE WALKER, Justice, dissenting.

I respectfully dissent to the majority's disposition of this appeal. Diaz pleaded[1] and proved[2] her case in reliance on our decision in *Wal–Mart Stores, Inc. v. Rangel,* 966 S.W.2d 199, 202 (Tex.App.-Fort Worth 1998, pet. ref'd).[3] The trial court denied Wal–Mart's motion for judgment notwithstanding the verdict in reliance on our decision in *Rangel.*[4] Yet today, the

> Q. There were not any type of warning signs or anything like that to customers not to take their drinks from the McDonald's to walk though the Wal–Mart, was there?
> A. No.
> Q. And you've seen customers walking around the store with their McDonald's drinks, right?
> A. Yes, sir.
> Q. That wasn't an unusual sight, was it?
> A. No.

**3.** In *Wal–Mart Stores, Inc. v. Rangel,* we held:

> In its brief, Wal–Mart maintains that Ms. Rangel did not prove that the store had constructive knowledge of the water and ice cubes because she could not show that the "substance had been on the floor for such a period of time that it would have been discovered and removed by the defendant in the exercise of ordinary care." However, that is not the standard Ms. Rangel had to meet. Rather than having to prove one particular instance of negligence or knowledge of one specific hazard (the water and ice), Ms. Rangel's right to recover from Wal–Mart required her to show that Wal–Mart had *knowledge of the foreseeable harm* that could result from the store's policy of allowing its customers to walk throughout the premises while carrying food and drinks.
> 966 S.W.2d at 202.

**4.** Diaz's response in opposition to Wal–Mart's motion for judgment notwithstanding the verdict on the actual or constructive notice issue contains three pages of discussion concerning our *Rangel* decision and argues that Diaz adequately proved Wal–Mart's knowledge of foreseeable harm. Specifically, Diaz explains:

> In this case, the store's assistant manager, who had worked fifteen years for Wal–Mart,

majority overrules our *Rangel* decision and renders judgment against Diaz on the very theory *Rangel* specifically held was "not the standard Ms. Rangel had to meet." *Id.* Because Diaz relied upon controlling precedent from this jurisdiction in pleading and proving[5] her case in the trial court, and because we are now overruling that precedent, I would remand this case for a new trial in the interests of justice.[6] TEX.R.APP. P. 43.3(b).

testified that before Ms. Rangel fell, he was aware of the store's policy, he knew people would carry food and drinks through the store, they could spill or drop those items on the floor, and that it was foreseeable a customer might slip, fall, and be injured in a liquid spilled on the floor by another customer. He also testified that in spite of that foreseeability, there were only three routine "safety sweeps" of the floor during each day.

5. The majority acknowledges that *Rangel* "had the effect of imputing knowledge of the actual defect based on the fact that the owner should foresee a potential defect solely because it allowed its customers to carry drinks on its premises." Yet, the majority holds that, nonetheless, Diaz should have proved that Wal–Mart "actually or constructively knew about the actual defect."

6. Appellate courts have remanded to the trial court in the interest of justice when the applicable law has changed between the time of trial and the disposition of the appeal or when precedent has been overruled. *See* TEX.R.APP. P. 42.3, 60.3; *see, e.g., In re Doe,* 19 S.W.3d 278, 290 (Tex.2000) (orig. proceeding) (Owens, J., concurring) (agreeing with remand to trial court in the interests of justice for new hearing due to recent supreme court opinion on the subject); *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 26 (Tex.1994) (remanding to trial court in the interest of justice when trial had

been conducted before any supreme court opinion specifically addressed the standards governing the imposition of punitive damages in bad faith cases); *Boyles v. Kerr,* 855 S.W.2d 593, 603 (Tex.1993) (remanding to trial court in the interests of justice for new trial because supreme court held no cause of action exists for negligent infliction of emotional distress and plaintiff chose to proceed below only on that theory); *Twyman v. Twyman,* 855 S.W.2d 619, 626 (Tex.1993) (remanding to trial court in the interests of justice for new trial when case proceeded to trial on theory subsequently overruled by supreme court); *Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 (Tex.1992) (refusing to remand to trial court in the interests of justice for a new trial but recognizing, "[T]he most compelling case for such a remand is where we overrule existing precedents on which the losing party relied at trial"); *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966) (remanding to trial court in the interests of justice for a new trial and recognizing that the courts of appeals are authorized to remand in the interest of justice); *Tex. Dep't of Transp. v. Bederka,* 36 S.W.3d 266, 273 (Tex.App.-Beaumont 2001, no pet.) (remanding to trial court in the interests of justice). The majority cites no authority for its novel proposition that a remand in the interest of justice is appropriate "only if the burden of proof for liability" under the overruled precedent is "higher," and none of the cases cited above recognize this distinction.