COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-388-CV

 

 

LISA MAGEE                                                                      APPELLANT

 

                                                   V.

 

PAPPADEAUX SEAFOOD KITCHEN                                            APPELLEE

 

                                              ------------

 

         FROM COUNTY
COURT AT LAW NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction

 








Appellant Lisa Magee brought a premises liability
and personal injury suit against Appellee Pappadeaux Seafood Kitchen after she
slippedCallegedly
on strawberry puree used on the restaurant=s
cheesecakeCand fell on her way to the
bathroom at the restaurant and fractured her arm.  Pappadeaux filed a motion for summary
judgment with supporting evidence claiming that the restaurant lacked actual or
constructive knowledge that any substance was on the floor where Magee
slipped.  After granting Magee an
extension of time to obtain controverting summary judgment evidence, the trial
court granted summary judgment in favor of Pappadeaux.

Subsequently, Magee filed a motion for
reconsideration and attached the affidavit of Linda Webster, the friend she was
dining with at the restaurant when she slipped. 
The trial court on its own motion sanctioned Magee by awarding
Pappadeaux $1,500 in attorney=s fees,
set aside the prior summary judgment, and, after the restaurant filed a second
motion for summary judgment, set a second summary judgment hearing.  After the second hearing, the trial court
again granted summary judgment for Pappadeaux.

In two issues, Magee claims that a genuine issue
of material fact exists concerning the restaurant=s
knowledge of the spill and that no legal basis exists for the trial court=s award
of attorney=s fees.  For the reasons set forth below, we will
affirm the trial court=s summary judgment but reverse
the award of attorney=s fees to Pappadeaux.

II. Summary Judgment













The summary judgment standard of review is well
settled; the parties agree on the applicable standard.  Consequently, we do not restate it here.  The restaurant filed a traditional motion for
summary judgment alleging that it had conclusively established that Ano one
actually observed any substance on the floor before or after Plaintiff=s fall .
. . [and] if substance was in fact on the floor, Pappadeaux had no actual or
constructive knowledge of its existence.@  The restaurant owed Magee, its invitee, a duty
to exercise reasonable care to protect her from dangerous conditions in the
restaurant that were known or reasonably discoverable, but it was not an
insurer of Magee=s safety.  See Wal-Mart Stores, Inc. v. Reece, 81
S.W.3d 812, 814 (Tex. 2002).  To prevail
in her premises liability suit, one of the elements that Magee was required to
prove was that the restaurant had actual or constructive notice of the spill.  See id. 
A slip-and-fall plaintiff satisfies the notice element by establishing
that (1) the defendant placed the substance on the floor, (2) the defendant
actually knew that the substance was on the floor, or (3) it is more likely
than not that the condition existed long enough to give the premises owner a
reasonable opportunity to discover it.  Id.;
Wal-Mart Stores, Inc. v. Diaz, 109 S.W.3d 584, 587 (Tex. App.CFort
Worth 2003, no pet.).  We examine
the summary judgment evidence, viewing it in the light most favorable to Magee,
to determine whether a genuine issue of fact exists concerning the notice
element of Magee=s premises liability cause of
action.  See Tex. R. Civ. P. 166a(c); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).          The
summary judgment evidence includes deposition excerpts from Tomi Herl, the Pappadeaux
manager on duty the evening Magee fell; deposition excerpts from Magee; the
affidavit of and deposition excerpts from Magee=s dining
companion on the night of the fall, Linda Webster; and deposition excerpts of Pappadeaux
employee Jimmy Contreras.

Herl testified that she inspected the area in
front of the kitchen entrywayCwhere
Magee slippedCwithin two minutes before Magee
fell.  Herl testified that she checks the
restaurant=s walkways every time she walks
by. Herl did not observe any substance or any wet spots on the floor.  Pappadeaux employee Contreras testified that
he was working the night that Magee fell, that he had walked the same path that
Magee walked just seconds before Magee did, and that he did not see any
substance on the floor.  Contreras said
that he was inspecting the floors as he walked because A[i]t=s what
we=re
suppose[d] to do.@








The restaurant=s policy
regarding spills requires any employee who notices a spill to stand near the
spill while another employee cleans it up. 
No Pappadeaux employee reported a spill in the area where Magee
fell.  Contreras testified that when he
cleaned the floor where Magee fell before closing that evening, he did not
observe any substance or residue on the floor. 
The area where Magee fell is inspected more frequently than other areas
because employees pass through that area on their way to the kitchen. 

Herl saw a red spot on Magee=s shirt
after the fall; she did not know what it was, but she agreed that it could have
been strawberry puree off of the top of a piece of strawberry cheesecake.  Magee testified that the smear of red
substance was on the Aright hip back part@ of her
shirt.  Hurl stated that there were two
smears, each about half the size of a dime. 
Webster=s affidavit indicates that she
rushed to help her fallen friend and saw Aa
smeared red substance on the floor@ where
Magee had fallen and also saw a smear of what appeared to be the same substance
on Magee=s
clothing.  Webster took Magee to the
emergency room and told her that twenty minutes before she had fallen, Webster
had noticed that the floor was slick in the same area. 













Viewed in the light most favorable to Magee,
Pappadauex conclusively negated the notice element of Magee=s
premises liability claim; the summary judgment evidence does not raise a
genuine issue of material fact on the notice element.  See Reece, 81 S.W.3d at 814; Brookshire
Food Stores, L.L.C. v. Allen, 93 S.W.3d 897, 901-02 (Tex. App.CTexarkana
2002, no pet.); see also  Clear
Creek Basin, 589 S.W.2d at 678.  The
summary judgment evidence conclusively negates each of the three ways Magee
could have established notice in a slip-and-fall premises liability claim.  First, Pappadeaux denied intentionally
placing a substance on the floor; the restaurant=s policy
requires immediate cleanup of any substances observed on the floor.  No summary judgment evidence exists raising
an issue as to whether Pappadeaux intentionally placed some substanceCclaimed
to be strawberry pureeCon the floor.  Cf. McClure v. Rich, 95 S.W.3d 620,
626 (Tex. App.CDallas 2002, no pet.) (holding
that evidence raised fact issue as to who placed rug on floor when evidence
showed that rug was not on floor when plaintiff arrived and that he and
defendant were the only two people in the house between his arrival and his
fall).  Second, Pappadeaux conclusively
established that it did not actually know of the substance alleged to be on the
floor.  See Diaz, 109 S.W.3d at
589.  Hurl testified that she inspected
the floor area where Magee fell less than two minutes before the fall and did
not see any substance on the floor. 
Contreras testified that he had walked the same path that Magee had
walked just seconds before Magee fell and that he did not observe any substance
on the floor.  No summary judgment
evidence exists that Webster told anyoneCeven
MageeCof the
slick area she had encountered until after Magee fell.  Thus, the only question remaining is whether
under the third Reece notice factor Ait is
more likely than not that the condition existed long enough to give the
premises owner a reasonable opportunity to discover it.@  Reece, 81 S.W.3d at 814; see also
Diaz, 109 S.W.3d at 589.  Pappadeaux
conclusively established via Herl=s and
Contreras=s testimony that no substance
was on the floor where Magee fell even seconds before her fall; the condition
did not exist long enough that Pappadeux should have discovered it.  See Allen, 93 S.W.3d at 901 (holding
that evidence was insufficient to prove that premises owner had reasonable
opportunity to discover grapes on floor when evidence showed that grapes were
on floor less than fifteen minutes and when no evidence existed that anyone saw
grapes on floor before plaintiff fell).













But does Webster=s
testimony that she encountered a slick area on the floor on her way to the
bathroom twenty minutes before Magee fell raise a genuine issue of material
fact as to whether the alleged conditionCstrawberry
puree on the floorCexisted long enough that
Pappadeaux should have discovered it? 
Webster testified that she encountered the slick area on her way to the
bathroom but that she did not encounter it as she walked back to her seat.  Webster did not look at or inspect the floor
either on her way to the bathroom or on her way back to her seat; she did not
see any substance on the floor until after Magee fell.[2]  Viewing Webster=s
testimony in the light most favorable to Magee, we nonetheless conclude that
there is no evidence that any substance was on the floor long enough to give
Pappadeaux a reasonable opportunity to discover it.  See Reece, 81 S.W.3d at 814; Allen,
93 S.W.3d at 901.   

Because no genuine issue of material fact exists
concerning the notice element of Magee=s
premises liability cause of action, the trial court correctly granted summary
judgment for Pappadeaux on that basis.  See
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co., 73 S.W.3d at 215; Clear Creek Basin, 589 S.W.2d at
678. We overrule Magee=s first issue.

III.  Attorneys= Fees

In her second issue, Magee argues that the trial
court abused its discretion by entering an April 12, 2005 order requiring her
to pay $1,500 in attorney=s fees to Pappadeaux.  The order grants Magee=s motion
for reconsideration of summary judgment for Pappadeaux and then provides,

        IT
IS THEREFORE ORDERED that the Order granting Defendant=s Motion
for Summary Judgment is set aside, subject to the Plaintiff, Movant=s,
payment of the sum of $1500.00 (One thousand five hundred dollars) as attorney=s fees
to the Defendant, Non-Movant, on or before Friday April 08, 2005, at 5:00 p.m.

Accordingly, the trial court sua sponte conditioned the granting of
Magee=s motion
for reconsideration on her payment of $1,500 in attorney=s fees
to Pappadeaux; no hearing was held, and no evidence was presented.  








The Texas Supreme Court has consistently held
that a prevailing party cannot recover attorney's fees from an opposing party
unless permitted by statute or by contract between the parties.  See, e.g., Holland v. Wal-Mart Stores,
Inc., 1 S.W.3d 91, 95 (Tex. 1999); Travelers Indem. Co. of Conn. v.
Mayfield, 923 S.W.2d 590, 593 (Tex. 1996); Dallas Cent. Appraisal Dist.
v. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex. 1992); First City Bank‑Farmers
Branch v. Guex, 677 S.W.2d 25, 30 (Tex. 1984); New Amsterdam Cas. Co. v.
Tex. Indus., Inc., 414 S.W.2d 914, 915 (Tex. 1967).  Pappadeaux does not point to any such statute
or contract as applicable here.

Instead, Pappadeaux claims that the attorney=s fees
award was proper as a sanction imposed pursuant to section 9.012 of the civil
practice and remedies code or pursuant to the trial court=s
inherent authority.  See Tex. Civ. Prac. & Rem. Code Ann. ' 9.012
(Vernon 2002).  Section 9.012 authorizes
the trial court on its own motion to impose sanctions, including ordering the
offending party to pay reasonable attorney=s fees,
if the trial court determines that a pleading is groundless and brought in bad
faith, groundless and brought for the purposes of harassment, or groundless and
interposed for any improper purpose, such as to cause delay or needless
increase in the cost of litigation.  Id.
'' 9.011,
.012(d).













But the trial court did not find that Magee=s motion
for reconsideration was groundless; rather, the trial court granted the motion
for reconsideration.  Thus, we hold that
civil practice and remedies code sections 9.011 and 9.012Cwhich
are applicable to groundless pleadingsCdo not
authorize the order=s requirement that Magee pay
Pappadeaux $1,500 in attorney=s
fees.  See Herrmann & Andreas Ins.
Agency, Inc. v. Appling, 800 S.W.2d 312, 320 (Tex. App.CCorpus
Christi 1990, no writ) (holding award of attorney=s fees
improper because defendants failed to show that plaintiff=s action
for breach of covenant not to compete was groundless or brought for improper
purposes).  We next address whether the
trial court=s order that Magee pay
Pappadeaux $1,500 in attorney=s fees
was authorized under the trial court=s
inherent authority.  Clearly, a trial
court possesses inherent authority to aid in the exercise of its jurisdiction,
in the administration of justice, and in the preservation of its independence
and integrity.  Eichelberger v.
Eichelberger, 582 S.W.2d 395, 398 (Tex. 1979).  A sanction imposed pursuant to the trial
court=s
inherent authority, like a sanction imposed pursuant to a statute, must be just
in that it must bear a direct relationship to the offensive conduct and not be
excessive.  See Tex. R. Civ. P. 215.5(b); Shook v.
Gilmore & Tatge Mfg. Co., 851 S.W.2d 887, 891 (Tex. App.CWaco
1993, writ denied).  Here, the problem is
that the trial court did not find that Magee engaged in any specific offensive
conduct.  See Shook, 851 S.W.2d at
891 (holding that inherent power applies only when evidence and factual
findings show that the conduct significantly interfered with the court=s
administration of its core functions). 
The trial court=s order and Pappadeaux=s
appellate brief suggest that Magee=s
offensive conduct was filing a motion for reconsideration along with an
affidavit that Magee could have obtained earlier, during the extension of time
she obtained to file her summary judgment response.  We cannot agree that filing a motion for
reconsideration is sanctionable offensive conduct.  Consequently, we sustain Magee=s second
issue; we reverse the portion of the trial court=s April
12, 2005 order requiring Magee to pay $1,500 in attorney=s fees
to Pappadeaux.

IV.  Conclusion

Having sustained Magee=s second
issue, we reverse the portion of the trial court=s April
12, 2005 order requiring Magee to pay $1,500 in attorney=s fees
to Pappadeaux.  Having overruled Magee=s first
issue, we affirm the trial court=s
summary judgment for Pappadeaux. 

 

PER
CURIAM

 

PANEL F:    WALKER, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED: July 6, 2006











[1]See Tex. R. App. P. 47.4.





[2]Webster described the
slick area as follows:

 

Q.  Can you describe the slickness?  I mean, how did it feel while you were
walking?

 

A.  I walked and it was like one of those slick
kind where you have to catch yourself. 
But I went on to the ladies room, came back to my seat.

 

Q.  When you felt the slickness of the floor, did
you look down to see if there was anything on the floor?

 

A.  No, I didn=t.

 

Q.  You didn=t?

 

A.  No.

 

Q.  It didn=t occur to you to look at the floor?

 

A.  No.

 

Q.  You didn=t think you slipped on anything?

 

A.  No.

 

Q.  You just thought it was a slick floor?

 

A.  Yes, I did.

 

Q.  On your way back from the restroom did you
have the same trouble walking?

 

A.  No.

 

Q.  Did you inspect the floor at that point
walking back?

 

A.  No, I did not.

 

Q.  Okay. 
So, it=s fair to say you have no
idea if there was any substance on the floor at the time you went to the
restroom?

 

A.  At the time, no.