

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

## NO. 02-15-00345-CV

CHARLES CAREY                                                    APPELLANT

V.

HI-LO AUTO SUPPLY, LP D/B/A                                      APPELLEES
O'REILLY AUTO PARTS AND
O'REILLY AUTOMOTIVE STORES,
INC.

----------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 352-268403-13

----------

## MEMORANDUM OPINION[1]

----------

Appellant Charles Carey appeals from the trial court's summary judgment

in favor of appellees Hi-Lo Auto Supply, LP, d/b/a O'Reilly Auto Parts and

---

[1]*See* Tex. R. App. P. 47.4.

O'Reilly Automotive Stores, Inc. (O'Reilly) on Carey's premises-liability claim. We affirm.

## I.  BACKGROUND

O'Reilly operates an automotive-parts and -supply store in Tarrant County, Texas.  On May 22, 2012, the store opened at 7:30 a.m.  Michelle Swafford, an O'Reilly employee, stocked the oil aisle between 7:30 and 8:00 a.m.  She inspected the aisle as she was stocking the shelves with oil.  The aisle had shelves of oil on both sides with an oil display located in the middle.  Two other employees at the store that day, Jared Sorrow and Sara Funchess, were working at the front counter, which was away from the oil aisle.

At approximately 10:00 a.m., Carey entered the store, spoke briefly with "Ronnie," a store employee, and then went down the oil aisle on his way to the commercial auto section of the store.  When Carey was approximately halfway down the oil aisle, his right foot "hit something . . . slick" on the floor, causing him to slip and fall to the floor.  Before he fell, Carey noticed nothing on the floor of the aisle, and he later stated that the store was clean and well-kept that day, which was normal for that store.  The fall knocked Carey unconscious.  When he regained consciousness, he used his cell phone to call the store's main number for help.  Swafford answered the call, and Carey told her that he was on the floor of the oil aisle and needed help.

Swafford went to the aisle and saw Carey lying on his back. "J.B.," the store manager,[2] also came to the aisle and tried to have Carey sit up, but because doing so made him dizzy, Carey lay back down. Swafford noticed that the back of Carey's shirt was covered with oil. As J.B. began wiping oil off of Carey, Carey noted that the oil was clear, making it undetectable on the white floor, and he saw leaked oil on a nearby shelf. The oil on the floor was concentrated in a single, one-foot area. Nevertheless, the store was unable to determine the source of the leak even though employees later inspected every can of oil on the aisle.

Carey filed suit against O'Reilly for premises liability under the theories of negligence and negligence per se.[3] He alleged that O'Reilly (1) failed to maintain its premises in a reasonable and safe condition, (2) created a dangerous condition, and (3) failed to adequately warn him of the dangerous condition or make the dangerous condition reasonably safe. Carey alleged that these failures or actions proximately caused severe injuries to "his shoulder, leg, head, back, and other parts of his body." O'Reilly moved for a traditional summary judgment because Carey had not raised a genuine issue of material fact that O'Reilly had actual or constructive notice of the dangerous condition. *See* Tex. R. Civ. P. 166a(c). O'Reilly also moved for a no-evidence summary judgment, arguing that

[2]Carey gave no further identifying information about J.B.

[3]Carey also raised a claim for gross negligence, but he waived this claim in the trial court.

3

there was no evidence of one or more essential elements of Carey's premises-liability claim: that O'Reilly had actual or constructive notice of a dangerous condition, that O'Reilly breached a duty to Carey, or that any breach of duty proximately caused Carey's damages. *See* Tex. R. Civ. P. 166a(i). The trial court held a nonevidentiary hearing on O'Reilly's hybrid motion and took it "under advisement." On September 25, 2015, the trial court entered an order granting O'Reilly's motion without stating its reasons. Carey appeals and argues that summary-judgment evidence raising genuine issues of material fact on each element of his premises-liability claim precluded summary judgment in O'Reilly's favor.

## II.  STANDARD AND SCOPE OF REVIEW

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's summary-judgment proof satisfied the rule 166a(c) standard. *Id.*

Under rule 166a(i) and after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary-judgment

4

evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004). When, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### III.  PREMISES LIABILITY

#### A.  LEGAL PRINCIPLES

A person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. *Id.* But when the injury is the result of the property's condition, as is the case here, premises-liability principles apply. *See id.* Therefore,

5

although Carey raised a premises-liability claim and appeared to additionally raise separate negligence and negligence-per-se claims, his allegations implicated premises-liability principles alone. *See* 1 J. Hadley Edgar Jr. & James B. Sales, *Texas Torts & Remedies* § 20.01[1], [3] (2015). Accordingly, Carey was required to establish the elements of premises liability no matter what label he put on his claim. *See id.* § 20.01[1].

Premises liability is a form of negligence where the duty owed to the plaintiff depends on the plaintiff's status at the time of the incident. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). It is undisputed that Carey was a business invitee at the time he fell. A premises owner has a duty to use reasonable care to keep the premises under his control in a safe condition for business invitees such as Carey by making the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances. *Occidental Chem.*, 478 S.W.3d at 644; *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015) (op. on certified question). *See generally Carlisle v. J. Weingarten, Inc.*, 152 S.W.2d 1073, 1075–76 (Tex. 1941) (discussing business invitees and duty of care owed by premises owners). The general rule is that a premises owner has "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the [owner] is, or reasonably should be, aware but the invitee is not." *Austin*, 465 S.W.3d at 203. This duty is limited to the duty to exercise ordinary, reasonable care and does not apply such that a premises owner becomes the insurer of an invitee's safety. *Id.*; *see also Brinson*

6

*Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) ("[A] condition is not unreasonably dangerous simply because it is not foolproof."). "What a reasonable [premises owner] would do is often a jury question, but sometimes it is not." *Austin*, 465 S.W.3d at 204.

The elements of a premises-liability claim are (1) actual or constructive notice of a condition on the premises by the owner, (2) the condition's posing an unreasonable risk of harm, (3) the owner's failure to exercise reasonable care to reduce or eliminate the risk, and (4) proximate causation from that failure to the plaintiff's injury. *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). In its no-evidence motion for summary judgment, O'Reilly first argued that Carey had proffered no evidence of the first element, i.e., that O'Reilly had actual or constructive notice of the condition itself:

> [N]ot only is there no evidence that O'Reilly had actual awareness of the oil on the floor prior to the alleged accident, but there is also no evidence to show (i) when or how the oil appeared on the floor, (ii) that the oil was conspicuous, or (iii) that there were employees in close proximity to the oil while it was on the floor.

O'Reilly raises these same arguments on appeal and contends that the lack of any evidence that it had actual or constructive notice of the oil on the floor compels this court to affirm the summary judgment.

To avoid a no-evidence summary judgment regarding a premises owner's actual or constructive notice of a condition on the premises, a plaintiff must proffer more than a scintilla of evidence that (1) the defendant placed the

7

substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it.  *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).  Carey did not allege that an O'Reilly employee placed the oil on the floor.

## B.  ACTUAL NOTICE

Carey contends that he proffered evidence that an O'Reilly employee actually knew that the substance was on the floor through his deposition testimony.  Carey testified that two weeks after his fall, he called J.B., who told him that a prior customer that same day bought "jugs" of oil that left oil "all over [the checkout] counter."[4]  J.B. did not tell Carey how long before Carey's fall this occurred.  In fact, Carey stated that there was "no mention of time."  Carey argues that this phone conversation along with the fact that he actually slipped on oil equated to more than a scintilla of evidence that O'Reilly had actual notice of the oil on the floor of the oil aisle.[5]

---

[4]Carey testified that J.B. said the customer was "another gentleman ahead of [Carey]."

[5]O'Reilly objected to this summary-judgment evidence in the trial court, arguing that it was inadmissible hearsay.  The record does not show that the trial court explicitly ruled on this objection, and the order granting summary judgment indicates that this evidence was considered.  We will consider this evidence in our review of the trial court's summary judgment; but because O'Reilly does not argue that the trial court abused its discretion by considering it, we make no ruling on its ultimate admissibility.

Carey's recounting of his phone conversation with J.B. indicates, at most, that J.B. was aware that the cans of oil another unnamed customer bought at an unspecified time before Carey's fall deposited oil on the counter while the customer was paying for the oil. Any inference that the oil on the counter gave J.B. actual notice of the oil on the floor in the oil aisle is speculative and cannot raise a fact issue regarding O'Reilly's actual notice. *See Univ. of Tex. v. Bellinghausen*, No. 03-14-00749-CV, 2016 WL 462735, at *5–6 (Tex. App.—Austin Feb. 3, 2016, no pet.) (mem. op.); *Univ. of Tex. at El Paso v. Muro*, 341 S.W.3d 1, 5–6 (Tex. App.—El Paso 2009, no pet.); *Esparza v. SGS-Thomson Microelecs., Inc.*, No. 05-98-01798-CV, 2001 WL 115054, at *2 (Tex. App.—Dallas Feb. 12, 2001, pet. denied) (not designated for publication); *see also Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) ("The representative's testimony contemplates the hypothetical knowledge of a dangerous condition, not actual knowledge of a dangerous condition."); *Jefferson Cty. v. Akins*, No. 09-14-00017-CV, 2016 WL 747477, at *7 (Tex. App.—Beaumont Feb. 25, 2016, pet. filed) ("A claimant cannot establish actual knowledge by piling inference upon inference."). Carey produced less than a scintilla of evidence that O'Reilly actually knew there was an oil spill on the floor of the oil aisle before Carey walked down that aisle. *See Young v. Wal-Mart Stores Tex., LLC*, No. 05-14-00362-CV, 2015 WL 1062744, at *2 (Tex. App.—Dallas Mar. 10, 2015, no pet.) (mem. op.).

## C. CONSTRUCTIVE NOTICE

Because there was less than a scintilla of evidence that O'Reilly had actual notice of the oil on the floor, Carey was required to produce more than a scintilla of evidence of O'Reilly's constructive notice—that it was more likely than not that the oil was on the floor long enough to give O'Reilly a reasonable opportunity to discover it, rectify it, or warn about it. *See Reece*, 81 S.W.3d at 814, 817; *Wal-Mart Stores, Inc. v. Diaz*, 109 S.W.3d 584, 588 (Tex. App.—Fort Worth 2003, no pet.). This iteration of constructive notice is commonly referred to as the "time-notice rule" and is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition. *See CMH Homes*, 15 S.W.3d at 102–03. The supreme court has explained that constructive notice cannot be found in the absence of evidence indicating how long a hazard was present, which involves an analysis of proximity, conspicuity, and longevity of the condition:

> An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it. Constructive notice demands a more extensive inquiry. Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition.
>
> What constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented. And proximity evidence will often be relevant to the analysis. Thus, if the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition

10

might shorten the time in which a jury could find that the premises owner should reasonably have discovered it. Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition. But in either case, there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition.

*Reece*, 81 S.W.3d at 816.

Carey contends that he raised a fact issue regarding constructive notice through Funchess's and Swafford's deposition testimony that "sometimes" oil would leak from the oil cans into the shipping box. Carey also relies on (1) Swafford's recognition that she had "a continuing job duty" to keep the aisles free of "hazards," (2) an O'Reilly regional manager's testimony that O'Reilly did not have a "process" for routine aisle inspection, and (3) Sorrow's testimony that he did not know when the oil aisle had last been inspected before Carey fell. Finally, Carey points to Sorrow's testimony regarding the 2½ hours between the time the store opened, which was when Swafford stocked the oil aisle, and the time Carey fell to show that the oil was on the floor long enough to impute constructive notice of the condition to O'Reilly.

We conclude that Carey's evidence did no more than raise the speculative possibility that O'Reilly could have discovered the oil on the floor before Carey fell. The spill was not conspicuous—it was not a large puddle and was clear so that it blended into the white floor. No evidence indicated when or how the spill came to be on the floor. Although Carey suggests that the oil was there from the

11

time the store opened until the time he fell, this is nothing more than speculation. There also was no evidence concerning the condition of the spilled liquid that might indicate how long it had been on the floor. It is undisputed that the cash registers were not within sight of the oil aisle, no one saw Carey fall, and no one was able to determine the source of the oil on the floor after Carey fell. Even J.B.'s alleged statement to Carey about a prior customer leaving leaked oil on the check-out counter did not supply any evidence of the length of time between the time that oil was purchased and Carey's fall. Carey failed to produce more than a scintilla of probative evidence raising a genuine issue of material fact regarding O'Reilly's constructive notice of the oil on the floor. *See, e.g.*, *id.* at 816–17; *Cox v. H.E.B. Grocery, L.P.*, No. 03-13-00714-CV, 2014 WL 4362884, at *3–4 (Tex. App.—Austin Aug. 27, 2014, no pet.) (mem. op.); *Gillespie v. Kroger Tex., L.P.*, 415 S.W.3d 589, 593 (Tex. App.—Dallas 2013, pet. denied); *Coburn v. Toys "R" Us–Del., Inc.*, No. 01-09-00871-CV, 2011 WL 345936, at *4–5 (Tex. App.—Houston [1st Dist.] Feb. 3, 2011, no pet.) (mem. op.); *Garcia v. Sellers Bros., Inc.*, No. 14-05-00954, 2006 WL 3360473, at *6–7 (Tex. App.—Houston [14th Dist.] Nov. 21, 2006, no pet.) (mem. op.); *Esparza*, 2001 WL 115054, at *2.

## IV. CONCLUSION

Viewing the record in the light most favorable to Carey, we conclude that Carey failed to proffer any evidence raising a genuine issue of material fact that O'Reilly had actual or constructive notice of the oil on the floor; thus, the trial court did not err by granting O'Reilly a no-evidence summary judgment on

12

Carey's premises-liability claim.  We need not address the other elements of Carey's claim.  *See* Tex. R. App. P. 47.1.  Accordingly, we overrule Carey's issue and affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED:  June 9, 2016